MAYOR OF THE CITY OF LANSING v KNIGHTS OF THE KU KLUX
KLAN (AFTER REMAND)

Docket No. 187765. Submitted February 4, 1997, at Lansing. Decided April
4, 1997, at 9:45 A.M. Leave to appeal sought.

The mayor of the City of Lansing and the City of Lansing brought an
action in the Ingham Circuit Court against the Knights of the Ku
Klux Klan and David A. Neumann for injunctive relief, seeking to
have a rally planned by the defendants to be held on the grounds of
the Capitol moved to an alternative site because of safety concerns.
The defendants filed a counterclaim, alleging prior restraint of their
First Amendment rights and seeking damages under 42 USC 1983
and for malicious prosecution. The court, Lawrence M. Glazer, J.,
following a hearing at which the parties were able to set forth their
respective positions, granted a preliminary injunction prohibiting
the rally from being held as scheduled on the grounds of the Capi-
tol. The defendants appealed. The Court of Appeals peremptorily
reversed the circuit court's decision, finding the circuit court's issu-
ance of the preliminary injunction to be an abuse of discretion,
because the plaintiffs' allegations of a threat of violence if the rally
were held on the grounds of the Capitol were insufficient to war-
rant enjoining the defendants' free exercise of their First Amend-
ment rights by the holding of a rally at that location, and remanded
the matter for further proceedings. Unpublished order of the Court
of Appeals, entered August 2, 1994 (Docket No. 177118). Thereaf-
ter, the parties each filed in the circuit court a motion for summary
disposition with respect to the defendants' counterclaim for dam-
ages under 42 USC 1983 and for malicious prosecution. The circuit
court granted summary disposition for the plaintiffs, concluding
that the plaintiffs could not be held liable under 42 USC 1983 for
seeking an overly broad injunction and that the malicious prosecu-
tion claim failed because the defendants had not demonstrated that
the plaintiffs' suit lacked probable cause. The defendants appealed,
claiming error only with respect to the dismissal of their § 1983
claim.

The Court of Appeals held:

1. Analysis of a claim brought under 42 USC 1983 against a
municipality requires examination of the questions whether the
plaintiff suffered an injury that was caused by the violation of a

constitutional right and, if so, whether the municipality was responsible for that violation. Here, for the purpose of consideration of the appropriateness of the granting of summary disposition for the plaintiffs, it must be assumed that the defendants suffered an injury as a result of the delay in the holding of their rally because of the judicial proceedings instituted by the plaintiffs and that the injury resulted from the violation of a constitutionally protected right, as is evidenced by the order of the Court of Appeals reversing the order granting the preliminary injunction.

2. As a general rule, no tort liability arises as the result of an erroneously issued injunction, because any resulting injury is deemed to have been caused by the act of the court in issuing the injunction, not by the act of the party who sought the injunction. The normal remedy for judicial error is found in the appellate process. Indeed, a rule that transforms judicial error into a basis for tort liability by an adversely affected litigant against a party who has brought a proceeding other than an obviously frivolous proceeding would chill the implicit constitutional right to legitimate access to the courts for redress of wrongs.

3. An exception to the general rule that no tort liability arises as the result of an erroneously issued injunction exists where the person who sought an injunction engaged in misconduct that tainted the process such that the court's decision cannot be separated from the party's misconduct. The possibility that an erroneous issuance of an injunction by a court cannot be separated from the misconduct of a party in failing to apprise the court fully and accurately of the facts necessary to decide properly the question whether an injunction should be issued increases where the proceedings are ex parte.

4. Although the injunction that the plaintiffs sought and the circuit court issued was ultimately determined to be overbroad in that it impermissibly infringed on the defendants' First Amendment rights, there is no showing that the plaintiffs engaged in any wrongdoing or made any misrepresentations that would have undermined the circuit court's ability to perform its adjudicative function or to exercise its discretion. Here, the plaintiffs merely argued that the undisputed facts concerning a prior Klan rally warranted the issuance of an injunction with respect to the planned rally in order to protect the public. The court made its decision and issued the injunction after an adversarial proceeding at which both sides had a full opportunity to proffer evidence, to contest proofs advanced by the other party, and to argue their respective positions. Because the court exercised independent judgment, untainted by any misconduct by the plaintiffs, it was the court's exercise of its judicial

discretion that was the cause of the constitutional violation at issue.

5. Because under the facts of this case the defendants cannot raise a genuine factual issue with respect to the element that their injury must be the result of a constitutional violation caused by the plaintiffs, the circuit court properly granted summary disposition for the plaintiffs with respect to the defendants' 42 USC 1983 counterclaim.

Affirmed.

1. CIVIL RIGHTS — ACTIONS — DAMAGES.

An action for damages brought against a municipality under 42 USC 1983 requires examination of the questions whether the plaintiff suffered an injury that was caused by the violation of a constitutional right and, if so, whether the municipality was responsible for that violation.

2. INJUNCTIONS — TORT LIABILITY — ACTIONS — CONSTITUTIONAL LAW — ACCESS TO COURTS.

No tort liability on the part of a person who seeks an injunction arises as the result of an erroneously issued injunction, because any resulting injury is deemed to have been caused by the act of the court in issuing the injunction, not by the act of the party who sought the injunction; a rule that transforms judicial error into a basis for tort liability by an adversely affected litigant against a party who has brought a proceeding other than an obviously frivolous proceeding would chill the implicit constitutional right to legitimate access to the courts for redress of wrongs.

3. INJUNCTIONS — TORT LIABILITY — MISCONDUCT.

An exception to the general rule that no tort liability arises as a result of an erroneously issued injunction exists where the person who sought an injunction engaged in misconduct that tainted the process such that the circuit court's ability to perform its adjudicative function or to exercise its discretion has been undermined.

*Brian W. Bevez*, Assistant City Attorney, for the plaintiffs and counter defendants.

*Mark Granzotto* and *Paul J. Denenfeld*, for the defendants and counter plaintiffs.

AFTER REMAND

Before: O'CONNELL, P.J., and MARKMAN and M. J. TAL-BOT*, JJ.

MARKMAN, J. Defendants, the Knights of the Ku Klux Klan and David A. Neumann, appeal as of right from an order granting summary disposition for plaintiffs, the mayor of the City of Lansing and the City of Lansing, with regard to defendants' countersuit, which sought damages pursuant to 42 USC 1983 and for malicious prosecution. We affirm.

On July 8, 1994, following the issuance of a state permit for a Klan rally to be held on the grounds of the Capitol building on July 23, 1994, plaintiffs filed a complaint for injunctive relief, asking the circuit court to order that the rally be held at an alternate site in light of various public safety concerns. Defendants counterclaimed, alleging that plaintiffs' initiation of the suit constituted an unconstitutional prior restraint on defendants' First Amendment rights, in violation of 42 USC 1983 and the Michigan Constitution, and that the suit constituted malicious prosecution.

Plaintiffs' suit was prompted by the events attending defendants' previous rally on the Capitol grounds on April 23, 1994. Despite the presence of approximately five hundred uniformed state and city police officers and total expenditures of $147,000 in public funds (including $47,000 by the City of Lansing), the April rally triggered occurrences of public disorder and violence. The mayor testified that "the crowd got out of control," "police security was breached," and

---

* Circuit judge, sitting on the Court of Appeals by assignment.

that the police "lost control," and a police officer tes-
tified that "there came a point in time where basically
we had no control of the crowd." On the basis of this
history, the mayor asked defendants to change the
location of the rally to a nearby city park—a more
defensible but also a more remote location in terms
of the potential audience for defendants' message.
Defendants rejected the offer. Plaintiffs then filed a
complaint seeking injunctive relief, claiming that they
would be unable to provide adequate police protec-
tion for the second rally as planned. The Ingham Cir-
cuit Court granted a preliminary injunction prohibit-
ing the demonstration from being conducted on the
Capitol grounds.

On appeal by defendants, a panel of this Court
peremptorily reversed the circuit court's decision in
an order that stated in relevant part:

Based upon the facts presented to this Court in the briefs
of the parties and in the complaint and affidavits of plain-
tiff, the circuit court's July 21, 1994 preliminary injunction
represents an abuse of discretion. The facts of this case do
not justify enjoining defendant's exercise of its First
Amendment rights in a quintessentially public forum, and
we find that the preliminary injunction was not narrowly
drawn to achieve a compelling state interest. *Madsen v
Women's Health Center, Inc* [512 US 753; 114 S Ct 2516; 129
L Ed 2d 593 (1994)]; *Forsyth County v The Nationalist
Movement*, 505 US [123]; 112 S Ct [2395]; 120 L Ed 2d 101
(1992); *Frisby v Schultz*, 487 US 474; 108 S Ct 2495; 101 L
Ed 2d 420 (1988); *Boos v Barry*, 485 US 312; 108 S Ct 1157;
99 L Ed 2d 333 (1988); *Perry Education Ass'n v Perry Local
Educat[ors'] Ass'n*, 460 US 37; 103 S Ct 948; 74 L Ed 2d 794
(1983); *Christian Knights of the Ku Klux Klan [Invisible
Empire, Inc] v District of Columbia* [297 US App DC 312]
972 F2d 365 ([]1992). Insulting and even outrageous speech
must be tolerated in order to protect First Amendment free-

doms. *Boos v Barry*, 485 US at 322. The grounds of the State Capitol are both symbolic and directly relevant to defendant's intended message. The threat of violence relied upon by plaintiff is insufficient to prohibit entirely defendant's speech in the public forum chosen by defendant. [*Mayor of the City of Lansing v Knights of the Ku Klux Klan*, unpublished order of the Court of Appeals, entered August 2, 1994 (Docket No. 177118).]

Because of conflicting interpretations of the scope and effect of our interlocutory decision, the parties then brought cross motions for summary disposition in the trial court. Defendants claimed that this Court's decision overturning the preliminary injunction rendered plaintiffs' case moot and that defendants were entitled to partial summary disposition with respect to their § 1983 claim and to compensatory and punitive damages. Plaintiffs claimed that they were entitled to summary disposition with respect to the § 1983 claim because their request for injunctive relief had not been arbitrary or capricious and had sought only to impose a permissible restriction on the place the rally was to be held. Following oral argument, the trial court issued a written opinion and order granting plaintiffs' motion for summary disposition with regard to defendants' counterclaims, apparently pursuant to MCR 2.116(C)(10). The court concluded that plaintiffs could not be held liable under 42 USC 1983 for seeking an overly broad injunction and that defendants' malicious prosecution claim failed because they had not demonstrated that plaintiffs' suit lacked probable cause.

The only issue before us is the appropriateness of the trial court's grant of summary disposition in favor of plaintiffs with respect to the § 1983 counterclaim, because defendants do not challenge the dismissal of

their malicious prosecution theory on appeal. This Court reviews decisions regarding motions for summary disposition de novo to determine if the moving party was entitled to judgment as a matter of law. *Stehlik v Johnson (On Rehearing)*, 206 Mich App 83, 85; 520 NW2d 633 (1994).

> MCR 2.116(C)(10) permits summary disposition when, except for the amount of damages, there is no genuine issue concerning any material fact and the moving party is entitled to [judgment] as a matter of law. A court reviewing such a motion must consider the pleadings, affidavits, depositions, admissions, and any other evidence in favor of the opposing party and grant the benefit of any reasonable doubt to the opposing party. [*Id.*]

42 USC 1983 provides that a person, including a public officer, acting under color of law who

> subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Proper analysis of a § 1983 claim against a municipality requires examination of two issues: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." *Collins v Harker Heights*, 503 US 115, 120; 112 S Ct 1061; 117 L Ed 2d 261 (1992). Here, we assume that the harm to defendants—which consists of a time-shifting of the planned rally due to judicial adjudication of the First Amendment issues—was caused by a constitutional violation, because this Court reversed the preliminary injunction on First

Amendment grounds.[1] The issue before us, therefore, becomes whether plaintiffs' action of seeking an injunction to limit the location of the rally "caused" the constitutional violation.

Here, plaintiffs' actions consisted exclusively of availing themselves of the legal process to try to limit the location of defendants' rally. The United States Supreme Court has recognized the validity under the First Amendment of injunctions placing narrowly-tailored time, place, and manner restrictions on speech. See *Madsen, supra.*[2] Here, plaintiffs, having

---

[1] We note that consideration of a threshold issue might have obviated the necessity of reaching the constitutional questions. Defendants obtained their permit from the Michigan Capitol Park Commission, which has authority to promulgate rules pursuant to the Administrative Procedure Act of 1969, MCL 24.201 *et seq.*; MSA 3.560(101) *et seq.*, for the management and operation of the State Capitol and its grounds, MCL 18.1298c(b); MSA 3.516(298c)(b). The commission consists of seven members, one of whom is a nominee of the mayor of the City of Lansing, MCL 18.1298(2); MSA 3.516(298)(2). The commission conducts its business subject to the Open Meetings Act and must give public notice of the time, date, and place of its meetings. MCL 18.1298a(1); MSA 3.516(298a)(1). Hence, we assume plaintiffs had constructive, if not actual, notice that defendants' application for a rally permit would be up for consideration by the commission before the actual approval of the permit and, likewise, had notice of the issuance of the permit. Accordingly, plaintiffs had an opportunity to argue their justification and evidentiary support for time, place, and manner restrictions to the commission. In lieu of seeking injunctive relief, they could have pursued remedies pursuant to MCL 600.631; MSA 27A.631 (RJA § 631). *Southeastern Oakland Co Incinerator Authority v Dep't of Natural Resources*, 176 Mich App 434; 440 NW2d 649 (1989). The present suit for injunctive relief was vulnerable to a motion to dismiss for plaintiffs' failure to exhaust its remedies under RJA § 631. *Blue Cross & Blue Shield of Michigan v Comm'r of Ins*, 155 Mich App 723, 729-734; 400 NW2d 638 (1986).

[2] The United States Supreme Court has recognized the power of the police to limit or curtail speech when there is a " 'clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order.' " *Feiner v New York*, 340 US 315, 320; 71 S Ct 303; 95 L Ed 295 (1951), quoting *Cantwell v Connecticut*, 310 US 296, 308; 60 S Ct 900; 84 L Ed 1213 (1940); see also *Cohen v California*, 403 US 15, 20; 91 S Ct 1780; 29 L Ed 2d 284 (1971). Recognizing that "the ordinary murmurings and objections of a hostile

some reason to anticipate violence, attempted to strike at it preemptively by pursuing an injunction to limit the place of the planned rally to a more easily defended location. Plaintiffs presented a colorable claim that their proposed injunction constituted an appropriate time, place, or manner restriction on defendants' First Amendment rights and sought a court ruling with respect to the issue.[3]

The direct "cause" of the constitutional violation here was the court's issuance of the overbroad injunction, not plaintiffs' pursuit thereof. If the court had denied the injunction, there would have been no constitutional violation. However, defendants argue that plaintiffs "caused" the constitutional violation because the court would not have issued the overbroad injunction unless plaintiffs had requested it. In other words, "but for" plaintiffs' lawsuit, the court would not have been prompted into taking its action.

Under federal law, the general rule is that if an injunction issues erroneously, any resulting irrepara-

---

audience cannot be allowed to silence a speaker" and "mindful of the possible danger of giving overzealous police officials complete discretion to break up otherwise lawful public meetings," the *Feiner* Court nevertheless held that when a situation threatens to turn into civil disorder, the authorities are not "powerless to prevent a breach of the peace." *Feiner,* *supra* at 320-321. See also *Schenck v United States,* 249 US 47, 52; 39 S Ct 247; 63 L Ed 470 (1919).

[3] Any error on plaintiffs' part was exclusively in their application of the law to the situation at issue. Such legal errors do not generally subject a party to tort liability. For example, we note that Michigan does not recognize a separate civil action for perjury, *Meyer v Hubbell,* 117 Mich App 699, 704; 324 NW2d 139 (1982); a fortiori, a litigant would not be liable for damages for making a nonperjurious plausible legal argument. Further, in the absence of frivolousness, a losing party is not even liable for the other party's attorney fees, much less tort damages, for seeking recovery to which it is ultimately found unentitled. See MCR 2.625(A)(2); MCL 600.2591; MSA 27A.2591; *State Farm Automobile Ins Co v Allen,* 50 Mich App 71, 74-80; 212 NW2d 821 (1973).

ble injury is not redressable because the error was an act of the court, not of the party who sought the injunction. *Detroit Newspaper Publishers Ass'n v Detroit Typographical Union No 18, Int'l Typographical Union*, 471 F2d 872, 876 (CA 6, 1972). Similarly, in Michigan, at common law the general rule is that there is no tort liability for wrongfully suing out an injunction. *In re Pritchard Estate*, 169 Mich App 140, 149; 425 NW2d 744 (1988). Federal and state court rules provide exceptions to this general rule.[4] Nevertheless, under the general rule, the act of filing a complaint seeking injunctive relief does not "cause" the erroneous issuance of the requested injunction for purposes of § 1983 because any erroneous issuance of an injunction is the act of the *court*.

More generally, the processes of the *law* can be said to have caused any constitutional violation resulting from an injunction. Here, the circuit court sought to interpret § 1983, the First Amendment, and the law concerning injunctions. The circuit court did nothing more than give voice to this law. That, in view of this Court, it ultimately erred in its interpretation does not alter the fact that it was the operation of the *law* itself that caused any resulting harm to

---

[4] For example, with respect to the issuance of a preliminary injunction or temporary restraining order, FR Civ P 65(c) and MCR 3.310(D)(1) provide for security, *in the amount the court deems proper*, for the payment of damages that "may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." MCR 3.310(D)(1) explicitly indicates the discretionary nature of this relief by stating that the court "may" require such security. Such express provisions of relief to a party injured by an injunction, if anything, underscore the continued viability of the general rule in Michigan and the federal system, to wit: that relief is not generally available to a party so injured apart from these rules. That the posting of security is not required of municipal corporations that seek injunctions, MCR 3.310(D)(2), does not, in our judgment, alter this inference.

defendants. Our legal system fully contemplates that courts will sometimes act in error and that such error will need to be corrected through an appellate process. Const 1963, art 6, §§ 1, 8, and 13. That such appellate process must be invoked before an error can be corrected does not mitigate the fact that it is the law itself that is working its effect upon the parties, not the will of the individual judge, much less that of the party initiating resort to the legal process. The law itself is responsible for the consequences of its operation, not the litigant who avails himself of that law.[5]

Moreover, a rule that transforms judicial error into a basis for tort liability by an adversely affected litigant would chill legitimate access to courts. The First Amendment right to petition the government has been construed to implicate the right of access to courts for redress of wrongs. *Sure-Tan, Inc v NLRB*, 467 US 883, 896-897; 104 S Ct 2803; 81 L Ed 2d 732 (1984); *Moore v Fragatos*, 116 Mich App 179, 185, n 3; 321 NW2d 781 (1982). Allowing a damages remedy here would elevate defendants' undeniable First Amendment rights over those of plaintiffs, when both sides here have called on the protections and guarantees of the United States Constitution. We believe that it would chill the right of access to the courts to make a litigant who invokes judicial remedies, in other than a frivolous proceeding, liable for damages for judicial

---

[5] That there are additional transactional costs, in terms of delay, involved in an *appeal* does not shift responsibility for the consequences of an erroneously granted injunction. Defendants' injury resulted from the fact that appellate correction of the circuit court's error was not instantaneous. However, the system does not generally compensate for such unavoidable delays of process.

error. No litigant, given a judiciary free of corruption and bias, has control over judicial actions.

Defendants rely on *Malley v Briggs*, 475 US 335, 344, n 7; 106 S Ct 1092; 89 L Ed 2d 271 (1986), in support of their contention that plaintiffs are responsible for the constitutional harm here. The *Malley* Court addressed the degree of immunity accorded a police officer whose submission of a criminal complaint that was facially inadequate to establish the requisite probable cause resulted in the issuance of an arrest warrant. It stated:

> [Section] 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." Since the common law recognized the causal link between the submission of a complaint and an ensuing arrest, we read § 1983 as recognizing the same causal link. [*Id.* (citation omitted).]

It held that the magistrate's action in authorizing the arrest warrant did not insulate the police officer from personal liability for a failure to exercise reasonable professional judgment in making the threshold determination whether the facts alleged could possibly justify an arrest. *Id.* at 345-346.

Defendants also cite a number of federal cases involving § 1983 causation issues.[6] All involve police officers who either provided misleading information or failed to provide relevant exculpatory information

---

[6] *Jones v Chicago*, 856 F2d 985 (CA 7, 1988); *Robinson v Maruffi*, 895 F2d 649 (CA 10, 1990); *Buenrostro v Collazo*, 973 F2d 39 (CA 1, 1992); *DeLoach v Bevers*, 922 F2d 618 (CA 10, 1990); *Goodwin v Metts*, 885 F2d 157 (CA 4, 1989); *Wagenmann v Adams*, 829 F2d 196 (CA 1, 1987); *Reich v Minnicus*, 886 F Supp 674 (SD Ind, 1993); *Johnson v Chicago*, 711 F Supp 1465 (ND Ill, 1989); *Mitchell v City of Hartford*, 674 F Supp 60 (D Conn, 1986).

in pursuing criminal charges and who argued that they were not responsible for any constitutional deprivations because other parties, e.g., prosecutors, intervened. In *Jones v Chicago*, 856 F2d 985, 993-994 (CA 7, 1988), the court reiterated that " 'a man [is] responsible for the natural consequences of his actions' " (citations omitted) and that *Malley* held that the issuance of an arrest warrant will not shield a police officer from liability if a reasonably well-trained officer would have known that his affidavit failed to establish probable cause. It continued:

> By parallel reasoning, a prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but to proceed to trial—none of these decisions will shield a police officer who deliberately supplied misleading information that influenced the decision. . . .
>
> . . . If police officers have been instrumental in the plaintiff's continued confinement or prosecution, they cannot escape liability by pointing to the decisions of prosecutors or grand jurors or magistrates to confine or prosecute him. They cannot hide behind the officials whom they have defrauded. [*Id.* at 994.]

These cases involve factual misrepresentations by police officers to the parties responsible for deciding whether to proceed with criminal charges or whether there is sufficient evidence to issue arrest or search warrants. In this context, where a subsequent decision-maker makes a decision solely on the basis of information provided by a police officer, usually in an ex parte presentation, that decision cannot shield the officer who engaged in wrongdoing by supplying false or misleading information. The misleading information is so enmeshed in the decision of the subsequent decision-maker that the officer's misconduct merges

with the action of the subsequent decision-maker. The essential point of these cases is that where the officer's misconduct taints the legal process, a decision bearing that taint cannot insulate the officer from liability.

Defendants cite *Wyatt v Cole*, 504 US 158, 164-165; 112 S Ct 1827; 118 L Ed 2d 504 (1992), for the proposition that § 1983 liability extends to parties who "set the wheels of government in motion by instigating a legal action." Actually the portion of *Wyatt* cited by defendants states only that the absolute immunity accorded public prosecutors and judges at common law "did not extend to complaining witnesses who, like respondents, set the wheels of government in motion by a legal action." *Id.* Thus, the *Wyatt* Court did not address the issue of the plaintiff's affirmative liability under § 1983 for seeking relief under the statute but only addressed whether they were entitled to absolute immunity akin to that of selected public officials. *Id.* at 168-169.

Further, *Wyatt* involved a statute allowing seizure of property on the basis of *ex parte proceedings*. See also *Lugar v Edmonson Oil Co, Inc*, 457 US 922; 102 S Ct 2744; 73 L Ed 2d 482 (1982). In these cases, the courts made decisions to seize or execute on property on the basis of information provided solely by the party seeking such relief and subsequent hearings required by the statutes resulted in the dismissal of the complaints. That these courts changed their minds about the propriety of seizure or execution suggests that only upon the subsequent full hearings were the courts provided with a complete recitation of the facts necessary to resolve the controversies. Accordingly, we believe that these cases also involved

situations where the actions of the parties seeking relief may be understood to have merged with the judicial actions.

The rationale of these cases carve out an exception to the general rule that the court—or more properly the law itself—rather than the party seeking an injunction, is responsible for a wrongly issued injunction. We note that the *Malley* Court itself expressly indicated that it was announcing an exception to the general rule that parties requesting relief are not responsible for errors by a court in issuing such relief:

> [I]t goes without saying that where a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable. But it is different if no officer of reasonable competence would have requested the warrant, i.e., his request is outside the range of the professional competence expected of an officer. [*Malley, supra* at 346, n 9.]

This exception applies when the party seeking an injunction engages in misconduct that taints the process such that the court's decision cannot be separated from the party's misconduct. For example, in *Dennis v Sparks*, 449 US 24, 25, 31-32; 101 S Ct 183; 66 L Ed 2d 185 (1980), the Court held that private parties who "participate in subverting the judicial process" by conspiring with a judge to "corruptly" issue an injunction were not immune from § 1983 damages liability. A merger of a party's actions with judicial action is also sometimes implicated when judicial decisions are made on the basis of ex parte proceedings. Ex parte proceedings allow a party to present a single version of the facts and applicable law without

an opportunity for an opposing party to contest these representations. The possibility that concerned the *Malley* Court with regard to arrest warrants—"it is possible that a magistrate, working under docket pressures, will fail to perform as a magistrate should," *Malley*, at 345-346—is largely vitiated in an adversarial proceeding. The actions of a party do not merge with the court's actions when the court is able to fulfill independently its adjudicative responsibilities and to exercise its discretion on the basis of information gleaned in an adversarial proceeding.

The proposition that a party is "responsible for the natural consequences of his actions" is limited where subsequent, independent factors are more proximately responsible for the consequences. In the cases cited by defendants, this proposition held because the officers' misconduct infected the subsequent decisions of prosecutors or judges and thereby remained the proximate causes of any constitutional violations. However, generally, in the absence of misconduct by a party that taints the process and the independence of subsequent decision-makers, what emerges from the legal process is more directly a consequence of the dictates of the law than the conduct of a litigant.

Here, plaintiffs' pursuit of the injunction, which was ultimately determined to be overbroad, did not taint the legal process. Plaintiffs did not engage in any wrongdoing. Plaintiffs did not make misrepresentations that would have undermined the trial court's ability to perform its adjudicative function or to exercise its discretion. Plaintiffs simply made the colorable argument that their proposed injunction was warranted under the undisputed facts relating to the previous Klan rally. Plaintiffs' attorney, exercising

"reasonable professional judgment," *Malley*, at 346, could have responsibly concluded that the request for preliminary injunctive relief was justified by the facts and the law. Further, the proceedings were not ex parte. They were conducted adversarially, as required by MCR 3.310(A)(1); both parties had a full opportunity to proffer evidence, to contest proofs advanced by the other and to argue their respective positions. The trial court was thus properly apprised of the facts and the arguments of both sides and was able to make an informed judgment concerning the merits of the proposed injunction. The exercise of this independent judgment by the court, untainted by any misconduct on plaintiffs' part, constitutes the "cause" of the constitutional violation at issue.

For these reasons, we conclude that defendants cannot raise a genuine factual issue indicating that plaintiffs were responsible for the constitutional violation at issue. Accordingly, the trial court properly granted plaintiffs' motion for summary disposition regarding the § 1983 claim, albeit on the basis of a different analysis than that articulated here. Therefore, we will not disturb the circuit court's holding on appeal. See *In re Condemnation of Private Property to Acquire Land for the Detroit Metropolitan Wayne Co Airport*, 211 Mich App 688, 692; 536 NW2d 598 (1995).

Affirmed.