[No. B082617. Second Dist., Div. Four. Dec. 1, 1995.]

JEFFREY R. BREWER, Plaintiff and Appellant, v.
ANITA TEANO, as Executor, etc., Defendant and Respondent.

**COUNSEL**

Donald T. Whitson for Plaintiff and Appellant.

Thomas & Price and Christian E. Sanne for Defendant and Respondent.

## OPINION

**EPSTEIN, Acting P. J.**—According to plaintiff's complaint, together with reasonable inferences from the allegations in that pleading, William P. Teano negligently and recklessly drove his car so that it repeatedly collided with a car driven by the plaintiff, Jeffrey R. Brewer. Afraid that he would be assaulted by Teano if he pulled over and stopped, plaintiff left the scene. A bystander, seeing him leave the scene of the accident, reported these events to police. As a result, plaintiff was arrested for hit-and-run. Later, criminal charges were filed against him, and he was held to answer for the felony grade of that crime. He was not convicted. Teano had died, and plaintiff sued his estate, the respondent in this appeal. Plaintiff sought compensation for damage to his car, for physical injury and emotional distress, and for expenses incurred as a result of the ensuing arrest and prosecution.

We conclude that the decision of the prosecutor to file felony charges against plaintiff, and of the magistrate to hold him to answer those charges, were superseding acts for which Teano's estate is not liable. We also conclude that plaintiff has pleaded a viable action against the estate for damage to his property and personal injury and emotional distress inflicted as a result of the collision. Finally, we conclude that his pleading does not provide an adequate basis to assess the superseding cause issues that bear on damages claimed on account of the arrest.

### FACTUAL AND PROCEDURAL SUMMARY

The case reaches us on pleadings, defendant's general demurrer having been sustained without leave to amend. Given that posture, we take as admitted (for purposes of testing the sufficiency of the pleading) all well-pleaded averments in the complaint.[1] (*Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732].)

The following appears from the amended complaint (negligence), the charging pleading.

On or about March 14, 1992, at 12:30 in the morning, as plaintiff was driving his vehicle on Temple Boulevard in Los Angeles County, Teano "so

---

[1]But only those averments. "The only issue involved in a demurrer hearing is whether the complaint, as it stands, unconnected with extraneous matters, states a cause of action." (*SKF Farms* v. *Superior Court* (1984) 153 Cal.App.3d 902, 905 [200 Cal.Rptr. 497].) Plaintiff's opening brief is an egregious violation of that restriction. In it, he presents factual material that goes far beyond the pleadings. Except where this information is clearly inferable from what is pleaded, we ignore it.

negligently, carelessly, recklessly and unlawfully managed, drove and operated [his vehicle] along and on Temple Boulevard in a generally westerly direction so as to cause it to repeatedly collide with plaintiff's automobile and to cause the injuries and damages hereinafter described." As a result of these collisions, plaintiff was afraid that if he stopped his car, Teano would assault him. He reacted instinctively and left the scene in order to find an area of safety, "thereby resulting in plaintiff being arrested and prosecuted for a felony." As a result of his vehicle being repeatedly struck, he also sustained physical and mental pain and suffering. Permanent injuries resulted from the encounter.

Plaintiff also alleged that he suffered pain and suffering as a result of his arrest and prosecution for a felony, presumably hit-and-run. (Veh. Code, § 20001.) He asserts that he was required to retain counsel for his defense of the criminal charges, that he was delayed in graduating and beginning his career, and that he lost his job. He also sought damages for medical care and treatment, and $487.50 for damages to his vehicle.

Teano's estate (Estate) demurred to the amended complaint, as it had to the original pleading. It was successful both times, the demurrer being sustained without leave on the second occasion.[2] The second demurrer was sustained on the ground the complaint failed to state a cause of action "in that it fails to state a causal link between the damages suffered" by plaintiff and the actions of Teano. A judgment (order of dismissal) in favor of the Estate was entered, followed by plaintiff's timely notice of appeal.

DISCUSSION

I

■ We begin with a brief treatment of two obvious bases for relief, adequately pleaded in the amended complaint.

The first is damage to plaintiff's vehicle resulting from the collisions which, in turn, were alleged to have been caused by Teano's negligent driving. The Estate does not challenge the actionability of these allegations; its only response is that the amount of the property damage claimed, under $500, is within the jurisdiction of the municipal court. (Code Civ. Proc.,

[2]Plaintiff does not claim the trial court abused its discretion in not allowing him leave to amend. (See *Powell* v. *Standard Brands Paint Co.* (1985) 166 Cal.App.3d 357, 366, fn. 7 [212 Cal.Rptr. 395].)

§ 86, subd. (a).) It asks that this part of the lawsuit be transferred to that court pursuant to section 396 of the Code of Civil Procedure. Defendant failed to make that request to the trial court. Nevertheless, as a jurisdictional claim it remains cognizable on appeal. Its deficiency is that the property claim does not stand alone, but is joined with personal injury claims that also are independent from the allegations about the arrest and criminal proceedings.

As we have discussed, plaintiff claims the Teano vehicle repeatedly and forcibly collided with the car plaintiff was driving, and that as a result he "suffered great mental, physical and nervous pain and suffering," resulting in "permanent injuries."

Defendant argues this is an insufficient pleading because it alleges no more than that Teano "negligently inflicted emotional distress ('NIED') where the alleged injury is accompanied by neither physical impact nor other injury." As such, it argues, damages for emotional distress are precluded by the doctrine stated in *Dillon* v. *Legg* (1968) 68 Cal.2d 728, 740 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316] and *Thing* v. *La Chusa* (1989) 48 Cal.3d 644 [257 Cal.Rptr. 865, 771 P.2d 814].

These are the well-known "bystander" cases. In negligence cases, policy considerations underpinning the concept of duty require that damages for emotional distress caused by observation of a negligently caused injury be limited to persons closely related to the injury victim, who are present at the time of the injury-producing event and aware that it is causing injury to the victim, and who suffer emotional distress as a result. (*Thing* v. *La Chusa, supra*, 48 Cal.3d at pp. 647, 666-668.)

This is not a bystander case. According to his pleading, plaintiff was the victim of Teano's negligent driving; he was not a mere observer. Physical impact was alleged. Finally, and fundamentally, plaintiff alleged both emotional and physical injury as a result of Teano's forcible collisions with the car plaintiff was driving. That is a sufficient conventional pleading for physical and emotional injury.

## II

The Estate contends that, as a matter of law, it cannot be liable for damages flowing from the criminal prosecution of appellant. (We shall review the claim for damages arising out of appellant's arrest in the final

section of our discussion.) The issue concerns application of the doctrine of superseding cause to the pleaded facts in this case.

The codified rule is that "[f]or the breach of an obligation not arising from contract, the measure of damages . . . is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." (Civ. Code, § 3333.)

Causation in the law of negligence is not determined by a linear projection from a "but for" premise. Instead, it is expressed in terms of "foreseeability" and is limited by the policy that cause must be "proximate." The problem is complex, and has bedeviled many. (See *State Comp. Ins. Fund* v. *Ind. Acc. Com.* (1959) 176 Cal.App.2d 10, 20 [1 Cal.Rptr. 73]; *Akers* v. *Kelly Co.* (1985) 173 Cal.App.3d 633, 658 [219 Cal.Rptr. 513]; and *Maupin* v. *Widling* (1987) 192 Cal.App.3d 568, 573 [237 Cal.Rptr. 521].) It was discussed in *Ballard* v. *Uribe* (1986) 41 Cal.3d 564 [224 Cal.Rptr. 664, 715 P.2d 624], in which our Supreme Court acknowledged the confusion that had arisen over the respective roles played by the court and jury in dealing with the foreseeability concept in tort doctrine. In some contexts it is a question of fact for the jury, and in others a "part of the calculus to which a court looks in defining the boundaries of 'duty.' " " '[D]uty' is not an immutable fact of nature, ' "but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." ' " The foreseeability of a particular kind of harm is significant in the duty calculus, "but a court's task—in determining 'duty'—is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party." By contrast, the jury considers foreseeability in two more focused, fact-specific settings: likelihood or foreseeability of injury in deciding whether defendant's conduct was negligent in the first place, and whether the negligence was a proximate or legal cause of plaintiff's injury. (41 Cal.3d at p. 572, fn. 6.)

These are policy concepts, and they underlie the special application of foreseeability involved in this case: the interplay of intervening and supervening causes. The rules are set out in the Restatement Second of Torts, which have been accepted as law in California. (*Stewart* v. *Cox* (1961) 55 Cal.2d 857, 864 [13 Cal.Rptr. 521, 362 P.2d 345].) We turn to the principal Restatement provisions.

█ "An intervening force is one which actively operates in producing harm to another after the actor's negligent act or omission has been committed." (Rest.2d Torts, § 441, subd. (1); all undesignated section references are

to the Restatement Second of Torts.) Whether it prevents an actor's antecedent negligence from being a legal cause of harm to another is determined by other rules (§ 441, subd. (2)), chiefly those governing the related concept of superseding cause.

"A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." (§ 440.) If the cause is superseding, it relieves the actor from liability whether or not that person's negligence was a substantial factor in bringing about the harm. (§ 440, com. b.) Section 442 sets out six considerations that are important in determining whether an intervening force is superseding, of which three are significant to our analysis:[3]

"(a) the fact that its intervention brings about harm *different in kind* from that which would otherwise have resulted from the actor's negligence;

"(b) the fact that its operation or the consequences thereof appear after the event to be *extraordinary rather than normal* in view of the circumstances existing at the time of its operation;

"(c) the fact that the intervening force is *operating independently* of any situation created by the actor's negligence, or, on the other hand, is or is not a *normal result* of such a situation." (Italics added.)

Section 442A provides that where the negligent conduct of the actor creates or increases the foreseeable risk of harm through intervention of another force and is a substantial factor in causing that harm, it is not a superseding cause.

As these guides suggest, whether a consequence is "normal" is important in determining whether it is superseding. The rule is summarized in section 443: "The intervention of a force which is a normal consequence of a situation created by the actor's negligent conduct is not a superseding cause of harm which such conduct has been a substantial factor in bringing about." But the meaning of "normal" is not what it seems.

"The word 'normal' is not used in this Section in the sense of what is usual, customary, foreseeable, or to be expected. It denotes rather the

---

[3]The others are: the fact that the intervening force is due to a third person's act or failure to act, the wrongful act of a third person, and the degree of culpability of the third person. (§ 442, subds. (d), (e), (f).)

antithesis of abnormal, of extraordinary. It means that the court or jury, looking at the matter after the event, and therefore knowing the situation which existed when the new force intervened, does not regard its intervention as so extraordinary as to fall outside of the class of normal events. When a negligently driven automobile hits a cow, it is scarcely to be regarded as usual, customary, or foreseeable in the ordinary sense in which that word is used in negligence cases, that the cow, after lying stunned in the highway for five minutes, will recover, take fright, and make a frantic effort to escape, and that in the course of that effort it will charge into a bystander, knock him down, and injure him. But in retrospect, after the event, this is not at all an abnormal consequence of the situation which the driver has created. It is to be classified as normal, and it will not operate as a superseding cause which relieves the driver of liability." (§ 443, com. b.)

Finally, "[i]t is the exclusive function of the court to declare the existence or non-existence of rules which restrict the actor's responsibility short of making him liable for harm which his negligent conduct is a substantial factor in bringing about, and to determine the circumstances to which such rules are applicable." (§ 453.)

In an often quoted passage, Witkin has distilled the following rule: "Where, subsequent to the defendant's negligent act, an independent intervening force actively operates to produce the injury, the chain of causation may be broken. It is usually said that if the risk of injury might have been reasonably foreseen, the defendant is liable, but that if the independent intervening act is highly unusual or extraordinary, not reasonably likely to happen and hence not foreseeable, it is a *superseding* cause, and the defendant is not liable." (6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 975, p. 366; *Akins* v. *County of Sonoma* (1967) 67 Cal.2d 185, 199 [60 Cal.Rptr. 499, 430 P.2d 57].)

Another respected treatise has put the matter in the following terms: "On its face, the problem is one of whether the defendant is to be held liable for an injury to which the defendant has in fact made a substantial contribution, when it is brought about by a later cause of independent origin, for which the defendant is not responsible. In its essence, however, it becomes again a question of the extent of the defendant's original obligation; and once more the problem is not primarily one of causation at all, since it does not arise until cause in fact is established. It is rather one of the policy as to imposing legal responsibility." (Prosser & Keeton, Torts (5th ed. 1984) § 44, p. 301.)

The application of intervening and superseding cause principles has been the subject of a substantial number of appellate decisions, and, in Justice

Kaus' phrasing, "[i]t would be idle to pretend that all [of these] cases are easily reconcilable." (*Ewart* v. *Southern Cal. Gas. Co.* (1965) 237 Cal.App.2d 163, 170 [46 Cal.Rptr. 631]; see *Pappert* v. *San Diego Gas & Electric Co.* (1982) 137 Cal.App.3d 205, 210 [186 Cal.Rptr. 847] [cases collected as of date of decision].) We recount a few of the more important California decisions.

*Akins* v. *County of Sonoma, supra,* 67 Cal.2d 185, involved injuries to a child who fell from county fairground bleachers onto a concrete floor. The lawsuit on his behalf was against the county, which asserted the intervening negligence of his parents as superseding its own negligence. The court agreed the parent's negligence was intervening, but not that it superseded. "This question . . . resolves around a determination of whether the later cause of independent origin, commonly referred to as an intervening cause, was foreseeable by the defendant or, if not foreseeable, whether it caused injury of a type which was foreseeable. If either of these questions is answered in the affirmative, then the defendant is not relieved from liability towards the plaintiff; if, however, it is determined that the intervening cause was not foreseeable and that the results which it caused were not foreseeable, then the intervening cause becomes a supervening cause and the defendant is relieved from liability for the plaintiff's injuries." (67 Cal.2d at p. 199.)

In *Hoyem* v. *Manhattan Beach City Sch. Dist.* (1978) 22 Cal.3d 508 [150 Cal.Rptr. 1, 585 P.2d 851] the issue was whether a school district could be liable for negligent supervision when a pupil leaves the school grounds during school hours and is injured by a motorist. The court concluded that the pupil's truancy was foreseeable, and the mere involvement of the negligence of a third party did not, in itself, absolve the district from its failure to supervise the pupil. (*Id.* at p. 521.)

Supervening (the term has the same meaning as "superseding," and we use them interchangeably) cause was argued in *Pool* v. *City of Oakland* (1986) 42 Cal.3d 1051 [232 Cal.Rptr. 528, 728 P.2d 1163], a case that is factually closer to this case. In *Pool* a supermarket chain initiated a campaign against persons passing counterfeit currency. Its personnel were asked to look for bills without the motto, "In God We Trust." Plaintiff passed a $100 bill without the motto, and market employees stalled him while they called police. The police who arrived were convinced by an assistant manager of the market that the bill was counterfeit, and they arrested plaintiff. It turned out the bill was genuine (the motto was added to $100 bills after the 1950 series; as luck would have it, plaintiff had a 1950A series bill without the

motto). He sued the supermarket, which argued that the act of police officers in failing to thoroughly investigate the bill before arresting plaintiff was supervening. But, the court held, a reasonable jury could determine that the arrest was foreseeable from the conduct of the market's employees. "[B]eing arrested by the police is one of the foreseeable consequences of reporting a transaction as illegal. . . . Likewise, accusing an innocent customer of felonious conduct and calling in the police could foreseeably lead to a police investigation, escalation of the conflict, and arrest, all of which would cause emotional distress. . . . Therefore, a jury could reasonably conclude that when [the market] reported to the police its unsupported suspicion that Pool's $100 was counterfeit, it created a foreseeable risk that an innocent customer would suffer emotional distress at the hands of the police." (42 Cal.3d at p. 1064.)

*Pool* and other cases relied on discussion in *Bigbee* v. *Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49 [192 Cal.Rptr. 857, 665 P.2d 947]. In *Bigbee* the plaintiff was using a telephone booth operated by defendant utility. The booth was 15 feet from the curbline of a busy highway, and was difficult to exit. Plaintiff was injured when a negligent motorist veered off the highway and struck the booth. He sued the utility, which argued that the negligence of the motorist was a superseding cause, cutting off its own negligence in the siting and design of the booth. The court reversed a summary judgment in favor of the utility. The issue it framed was whether the risk that a car might crash into the booth and injure a person inside was reasonably foreseeable under the circumstances of the case. The court said it is well to remember that " 'foreseeability is not to be measured by what is more probable than not, but includes whatever is likely enough in the setting of modern life that a reasonably thoughtful [person] would take account of it in guiding practical conduct.' " (*Id.* at p. 57, quoting 2 Harper & James, Law of Torts (1956) § 18.2, p. 1020.) The risk could not be said to be unforeseeable as a matter of law.

Given the particular factual settings in these cases, the courts that decided them found no superseding cause. Other cases, reviewing other factual settings under the same or substantially the same standards, have found particular intervening forces to be superseding.

In *Richards* v. *Stanley* (1954) 43 Cal.2d 60 [271 P.2d 23], our Supreme Court, in an opinion by Justice Traynor, held that the negligent act of a car thief causing injury to a third person was a superseding cause that cut off any liability resulting from the owner's negligence in leaving the car keys in the ignition. (But see *Ballard* v. *Uribe, supra,* 41 Cal.3d at pp. 572-573, fns. 5

and 6 [discussing later cases that recognized liability based on special circumstances in "ignition key" cases], and *Jackson* v. *Ryder Truck Rental, Inc.* (1993) 16 Cal.App.4th 1830, 1843 [20 Cal.Rptr.2d 913] [similar].)

Third party negligence was held to be superseding in *Schrimsher* v. *Bryson* (1976) 58 Cal.App.3d 660 [130 Cal.Rptr. 125]. In that case, a highway patrol officer, investigating an accident, ordered the driver of one of the involved vehicles to pull his car off the road. That person was under the influence of alcohol. A third car, driven by another drunk driver, veered off the road, struck the car the officer had ordered pulled over, and forced that car into the officer, who was injured. By then the original drunk driver had been arrested and was seated, handcuffed, in a highway patrol vehicle. The court held the action of the second drunk driver "could not reasonably have been anticipated by defendant at the time of his initial negligence and as a matter of law the chain of causation was broken." (*Id.* at p. 664; see also *Powell* v. *Standard Brands Paint Co., supra,* 166 Cal.App.3d at p. 364 [plaintiffs used defendant's paint thinner, then used paint thinner made by another manufacturer, during which an explosion occurred, causing injury; explosion of the second product and resulting injuries were not reasonably foreseeable consequences of defendant's failure to warn]; *Gonzalez* v. *Derrington* (1961) 56 Cal.2d 130, 133 [14 Cal.Rptr. 1, 363 P.2d 1] [defendant negligently sold gasoline in an open can to a person who used it to set fire to an occupied bar; the act of the arsonist was superseding]; *Lopez* v. *McDonald's Corp.* (1987) 193 Cal.App.3d 495 [238 Cal.Rptr. 436] [demented person killed persons in fast food restaurant; failure of restaurant to have a security guard was not a substantial factor in the deaths]; see generally, 6 Witkin, Summary of Cal. Law, *supra,* Torts, §§ 975-996, pp. 366-387.)

In many cases, the issue whether an intervening force is superseding or not is a question of fact for the jury to decide. But, like proximate cause generally, it is a matter of law where only one reasonable conclusion may be reached. (See *Weaver* v. *Bank of America* (1963) 59 Cal.2d 428, 434 [30 Cal.Rptr. 4, 380 P.2d 644]; *Schrimsher* v. *Bryson, supra,* 58 Cal.App.3d at p. 664; *Pool* v. *City of Oakland, supra,* 42 Cal.3d at pp. 1063, 1065.) "Whether a defendant's conduct is an actual cause of a plaintiff's harm is a question of fact, but the existence and extent of a defendant's liability is a question of law and social policy." (*Maupin* v. *Widling, supra,* 192 Cal.App.3d at p. 573.)

Plaintiff argues this case presents a simple chain of causation scenario, and cites *Champagne* v. *A. Hamburger & Sons* (1915) 169 Cal. 683 [147 P. 954] for the proposition he is entitled to recover for the damages and

expenses he incurred as a result of the criminal proceedings against him. But as we have seen, the legal issues involved in causation are not nearly that simple. *Champagne* was a case in which, due to defendant's negligence, an elevator fell and plaintiff was injured by the rush of people trying to escape. That sort of panic reaction is not our case at all, except as it bears on the reason plaintiff alleges he fled the scene after colliding with Teano's vehicle. We may assume, for purposes of this discussion, that plaintiff's decision to leave was foreseeable under the circumstances.

■ The pleading alleges "reckless" conduct by Teano, and it specifically claims that he repeatedly caused his car to collide with appellant's vehicle. This comes close to pleading an intentional tort. From that prospect, the doctrine of superseding cause is less likely to cut off the chain of events put in motion by the original conduct of the tortfeasor. (See *Tate* v. *Canonica* (1960) 180 Cal.App.2d 898, 906 [5 Cal.Rptr. 28]; *Lopez* v. *Surchia* (1952) 112 Cal.App.2d 314, 318 [246 P.2d 111]; *Ray Wong* v. *Earle C. Anthony, Inc.* (1926) 199 Cal. 15, 18 [247 P. 894]; §§ 435B, 870; 6 Witkin, Summary of Cal. Law, *supra*, Torts, § 1323, p. 781 ["The modern tendency is to impose broader liability for consequences where the defendant was guilty of an intentional wrong than where his conduct was merely negligent."].) Nevertheless, as these authorities indicate, even the "but for" consequences of an intentional tort are not without limitation.

The criminal prosecution in this case was not an immediate reaction to an on-the-scene situation, but the product of what, we must assume, was the considered and careful judgment of a number of persons. First, a prosecutor had to review the information presented and available and decide to file a formal criminal complaint. After that, the prosecution had to present enough evidence to convince a magistrate, or a grand jury, that the crime of felony hit-and-run had been committed by plaintiff. (See Pen. Code, §§ 858-872, 939-945.) The resulting indictment or information then had to be filed in superior court. (Pen. Code, § 948 et seq.) It was subject to testing by a motion to dismiss for insufficiency of evidence (Pen. Code, § 995) and, most important, by the trial itself. Assuming for argument's sake that plaintiff was acquitted, that fact tells us only that a jury or judge was not convinced beyond a reasonable doubt that he was guilty; it does not tell us that he was innocent.

This would be a different case if plaintiff were suing someone who had framed him for a crime (see *Hibma* v. *Odegaard* (7th Cir. 1985) 769 F.2d 1147), or if the real culprit of a crime stood by silently while plaintiff was prosecuted for the offense (see *Seidel* v. *Greenberg* (1969) 108 N.J. Super.

248 [260 A.2d 863, 40 A.L.R.3d 987]). What we have, instead, is Teano's allegedly negligent driving which inspired plaintiff to leave the scene.

As the Restatement and California cases instruct us, we look at what happened with the benefit of hindsight. Even from that perspective, it cannot be said that the intervening force consisting of the prosecution of formal criminal charges against plaintiff was "foreseeable" from Teano's conduct, however characterized. The harm from that proceeding was different in kind from that which may be expected to result from the kind of conduct alleged in this case. (§ 442, com. (a).) It is an extraordinary rather than a normal result of Teano's act. (*Id.*, com. (b).) The decision of prosecutors to file against plaintiff, and of the magistrate or grand jury to hold him to answer felony charges, operated independently from anything that Teano did; they cannot be described as a normal result of his negligent driving. (*Id.*, com. (c).) Whether Teano's conduct was negligent or deliberate, it would be "an unwarranted extension of liability" (*Schrimsher* v. *Bryson, supra,* 58 Cal.App.3d at p. 664) to hold that Teano's estate is liable for these remote official acts of independent public officers. We conclude that, as a matter of law, plaintiff is not entitled to recover for the damages he suffered as a result of the filing of criminal charges and the subsequent proceedings in the criminal case.

### III

■ We turn now to appellant's claim for damages for his arrest. As before, the principal issue is superseding cause. Depending on the circumstances, an arrest by police may or may not be a superseding cause, cutting off liability for what has gone before. (See Civ. Code, § 3333; §§ 435B, 440-443, 453, 870; *Weaver* v. *Bank of America, supra,* 59 Cal.2d 428, 434; *Pool* v. *City of Oakland, supra,* 42 Cal.3d 1051, 1064.) But unlike the issue of superseding cause as it relates to the criminal prosecution, where we are able to glean enough to decide the legal issues, the complaint is too sparse to justify a conclusion that the arrest was superseding as a matter of law. It tells us nothing about the connection between Teano's driving and Brewer's arrest, whether he was released or required to spend time in custody, the outcome of the criminal prosecution, or whether Teano died as a result of the collisions. (The Estate did not demur on the ground of uncertainty.) We are unwilling to decide the issue in a factual vacuum. Resolution of the causation issue will have to await development of the facts.

## DISPOSITION

The judgment (order of dismissal) is reversed, and the case remanded for further proceedings consistent with this opinion. Each party is to bear its costs on appeal.

Hastings, J., and Klein (Brett), J.,* concurred.

---

*Judge of the Municipal Court for the Los Angeles Judicial District sitting under assignment by the Chairperson of the Judicial Council.