[No. S144492. Apr. 24, 2008.]

MANTA MANAGEMENT CORPORATION, Cross-complainant and Respondent, v.
CITY OF SAN BERNARDINO, Cross-defendant and Appellant.

**COUNSEL**

Arias, Lockwood & Gray, Arias & Lockwood, Arias Aaen, Joseph Arias, Christopher D. Lockwood and Laura Tall Liu for Cross-defendant and Appellant.

Roger Jon Diamond for Cross-complainant and Respondent.

**OPINION**

**CHIN, J.**—Under federal law, "[l]ocal governing bodies . . . can be sued directly under [title 42, United States Code,] § 1983 for monetary . . . relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." (*Monell v. New York City Dept. of Social Services* (1978) 436 U.S. 658, 690 [56 L.Ed.2d 611, 98 S.Ct. 2018], fn. omitted (*Monell*).)

■ Here, Manta Management Corporation (Manta) seeks monetary damages against the City of San Bernardino (the city) for lost profits caused by a preliminary injunction and a stay pending appeal that the city sought and that a superior court and a Court of Appeal, respectively, issued. Ultimately, those courts held that the city's ordinance that was the legal basis for the preliminary injunction was unconstitutional. We must decide whether the city is liable under title 42 United States Code section 1983 (section 1983) for lost profits to Manta while the injunction and stay were in effect. We conclude, consistent with analogous federal and state court decisions, that the courts' intervening exercise of independent judgment in issuing the preliminary injunction and stay, though the former was dissolved and the latter was lifted after the ordinance was declared unconstitutional, breaks the chain of causation for purposes of section 1983 liability in the absence of evidence that the city materially misled or pressured the judges who were expected to exercise independent judgment. In this case, where the parties dispute whether material misrepresentations were made to the judges who issued the preliminary injunction and the stay, we reverse the judgment of the Court of Appeal and remand the case for further proceedings on that factual issue.[1]

## I. FACTUAL AND PROCEDURAL HISTORY

The facts and procedural discussion are taken largely from the Court of Appeal opinion, supplemented by the entire record in San Bernardino County Superior Court case No. SCV18157.[2]

The City of San Bernardino Municipal Code regulates adult businesses, including adult cabarets. (San Bernardino Mun. Code, § 19.06.030,

---

[1] Manta argues that the city was required to post an injunction bond and that the judgment of the trial court should be affirmed on the ground that the city refused to post a bond. The bond issues discussed by the parties are irrelevant to our disposition of the case. We therefore choose not to address them. (Cal. Rules of Court, rule 8.516(b)(3).)

[2] We have taken judicial notice of the entire record in case No. SCV18157, including the appellate records in *People v. Manta Management Corp.* (Jan. 26, 1999, E019635) (nonpub. opn.) and *People v. Manta Management Corp.* (June 5, 1997, E015790 [app. dism.]).

subd. 2.A.) As relevant here, a zoning ordinance (the ordinance) in effect at the time in question prohibited adult businesses in regional commercial or "CR-3" zones while permitting those businesses to be located in CH (heavy commercial) or IL (light industrial) zones. In 1994, Manta opened a comedy nightclub (the Club) in the city's CR-3 zone, in which nightclubs were a permitted use. Six months after the Club opened, Manta converted it to an adult cabaret called The Flesh Club and began to present "topless entertainment" in place of comedy. Once Manta converted its comedy club to an adult entertainment business, the Club was not in compliance with the city's ordinance in effect at the time, which limited adult businesses to CH and IL zones. On the day that it began operating as an adult cabaret, Manta sued the city in federal court, alleging, inter alia, that the city's location limitations were unconstitutionally restrictive.

In January 1995, the city filed an action in state court seeking to enjoin the operation of Manta's cabaret on the ground that it was a public nuisance that violated the city's zoning laws. (Code Civ. Proc., § 731.)[3] In response to the city's ex parte application for a temporary restraining order and order to show cause regarding a preliminary injunction, Manta argued that the initial ordinance violated its free speech rights under article I, section 2 of the California Constitution, "as applied," because it was "unduly restrictive."[4] The superior court issued a temporary restraining order and scheduled a hearing on the motion for a preliminary injunction.

During the hearing on the motion for a preliminary injunction, Manta again contended that the ordinance violated its free speech rights under the California Constitution. The city argued the ordinance was constitutional and asked the trial court "to enforce [it] by means of injunctive relief." The trial court expressed its view that the ordinance's "zone restrictions" were consistent with the city's general plan policy "to control the location of adult businesses based on proximity requirements." It granted the city's motion for a preliminary injunction and ordered Manta to cease adult cabaret performances at the Club. In so doing, the trial court stated that the city "has established that its likelihood of prevailing on the merits is strong." The court noted that allowing the Club to continue as an adult business "could cause as

---

[3] In its federal court action, Manta sought a judicial declaration that it had the right to present topless entertainment at its cabaret and a permanent injunction preventing the city from enforcing the ordinance. After the city filed its own action in state court, the city asked the federal court to refrain from deciding its case pending the state court's consideration of the city's request for an injunction. The federal lawsuit ultimately was dismissed on abstention grounds and has no bearing on the issues before this court.

[4] While Manta's federal action was pending, Manta expressly chose not to raise any federal issues in state court because it did not want "to be compelled to litigate federal constitutional issues in state court."

much harm to the surrounding businesses as to any subjective harm to the adult entertainment business as projected by [Manta]." The court expressly chose to abate the challenged activity on a showing that Manta violated the local zoning ordinance rather than allow the activity to continue during the "judicial process which can take up to ten years" to litigate the constitutionality of the underlying ordinance. It added that the Club could resume operation as a comedy club because the injunction only restricted operation as an adult business.

In November 1995, while Manta's appeal from the order granting the preliminary hearing was pending, Manta filed a cross-complaint in the trial court. That complaint included, in addition to state causes of action that were eventually dismissed, a cause of action in which Manta sought monetary relief pursuant to section 1983 based on its allegation that the ordinance and actions of the city violated Manta's federal civil rights.

One year later, after a nonjury trial, the trial court dissolved the preliminary injunction after ruling the city's ordinance an unconstitutional infringement on Manta's First Amendment right to free speech as applied to Manta's cabaret because it "neither serve[d] a substantial governmental interest nor allow[ed] for reasonable alternative avenues of communication." The city appealed and moved for a stay pending appeal. In response, the Court of Appeal issued a writ of supersedeas (the stay) that prevented Manta from "operating as an adult business" pending resolution of the appeal. It dismissed as moot Manta's appeal from the order granting the preliminary injunction.

Approximately two years later, on January 26, 1999, the Court of Appeal lifted its stay after we denied review of its opinion affirming the trial court's order dissolving the preliminary injunction.[5]

In 2000, the parties agreed to a nonjury trial on the issue of the city's liability under section 1983 and a separate jury trial on damages. In the liability phase, the trial court ruled that the acts of "precipitating" the preliminary injunction and stay were an effort to enforce an unconstitutional zoning ordinance. It held that those acts violated Manta's federally protected rights and constituted a basis for section 1983 liability. On the other hand, the court did not find that the city's ordinance itself was a basis for section 1983 liability. A jury awarded Manta $1.4 million in damages for profits lost while subject to the injunction and the stay.

The city appealed and argued that it could not be liable for damages under section 1983 because it had sought redress through the courts. The Court of

---

[5] *People v. Manta Management Corp.* (Jan. 26, 1999, E019635) (nonpub. opn.), review denied April 21, 1999, S062091 (*Manta*).

Appeal affirmed the judgment obtained under section 1983. It held that the city's act of obtaining an injunction to enforce an unconstitutional ordinance is an act in violation of the First Amendment within the meaning of section 1983, and that, accordingly, "a city is liable for damages under section 1983 if it chooses to enforce an unconstitutional ordinance by means of a preliminary injunction." The Court of Appeal concluded that "the city's good faith reliance on the trial court's issuance of the preliminary injunction does not provide it with immunity." We granted review.

## II.  DISCUSSION

As relevant here, section 1983 provides that "[e]very person who, under color of any . . . ordinance . . . of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

■ As noted above, "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary . . . relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." (*Monell, supra,* 436 U.S. at p. 690, fn. omitted.) Section 1983 was enacted to provide compensation "to those deprived of their federal rights by state actors," a category that includes cities and other local governments. (*Felder v. Casey* (1988) 487 U.S. 131, 141 [101 L.Ed.2d 123, 108 S.Ct. 2302]; see also *Monell, supra,* 436 U.S. at p. 690.) In particular, cities are liable for damages resulting from their actions that cause an infringement of free speech as protected under the First Amendment to the federal Constitution. (See, e.g., *Gerritsen v. City of Los Angeles* (9th Cir. 1993) 994 F.2d 570, 575–578, cert. den. (1993) 510 U.S. 915 [126 L.Ed.2d 253, 114 S.Ct. 306] [city's enforcement of an unconstitutional ordinance restricting handbill distribution supported a § 1983 action for monetary damages].)

■ " 'Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." ' [Citations.]" (*County of Los Angeles v. Superior Court* (1999) 21 Cal.4th 292, 297 [87 Cal.Rptr.2d 441, 981 P.2d 68].) Although section 1983 is silent as to what remedies are available to those suing for a violation of their civil rights, the United States Supreme Court has held that monetary damages are available under that section for actions that have violated federal " 'constitutional rights and . . . have caused compensable injury . . . .' [Citations.]" (*Carey v. Piphus* (1978) 435 U.S. 247, 255 [55 L.Ed.2d 252, 98 S.Ct. 1042], italics omitted.) Thus, a city may be sued for monetary relief under

section 1983 if it *unconstitutionally implements* an ordinance adopted by its officers. "Because section 1983 does not comprehensively dictate the procedures and remedies applicable to actions brought under it, a state court ordinarily applies state law in adjudicating those actions. The supremacy clause of the federal Constitution, however, prohibits a state court from applying state law that is inconsistent with federal law. [Citations.]" (*County of Los Angeles v. Superior Court, supra*, 21 Cal.4th at p. 298.)

█ The proper analysis of a section 1983 claim against a municipality requires the examination of two interrelated issues, namely, "(1) whether plaintiff's harm was caused by a [federal] constitutional violation, and (2) if so, whether the city is responsible for that violation." (*Collins v. Harker Heights* (1992) 503 U.S. 115 [117 L.Ed.2d 261, 120, 112 S.Ct. 1061].) "[T]he fact that a § 1983 claimant has demonstrated a violation of [his or] her federally protected rights under color of state law does not necessarily mean that a named defendant will be found liable under § 1983. The liability of a § 1983 defendant depends upon (1) the rules governing culpability and responsibility, including principles of causation and the rule against respondeat superior liability; (2) whether individual or governmental liability is at issue; and (3) the available immunities from liability." (Schwartz, Section 1983 Litigation: Claims and Defenses (4th ed. 2003) § 6.01, p. 6-3.) Of the three major issues concerning culpability and responsibility, one is relevant here, namely, "[t]he issue of causation: how closely related a defendant's action or inaction must be to the alleged injury . . . ." (*Ibid.*) On the issue of causation, "[f]ederal courts turn to the causation factors developed in the common law of torts to supply the necessary causation factor in the civil rights field." (*Stevenson v. Koskey* (9th Cir. 1989) 877 F.2d 1435, 1438.)

In the case before us, we assume, without deciding, that the city's ordinance as written violated Manta's First Amendment right to free speech because the Court of Appeal affirmed the trial court's decision to dissolve the preliminary injunction on First Amendment grounds and we denied review of that decision in *Manta, supra*, E019635. However, the ordinance caused Manta no harm because Manta did not abide by it. Manta suffered no monetary damages until the trial court enjoined its operating an adult cabaret where its comedy club had been located. The issue before us is whether the city's *act of seeking an injunction* to enforce the ordinance dealing with the location of adult businesses and its subsequent *act of filing a petition for writ of supersedeas* to obtain a stay pending appeal "caused" the harm suffered by Manta to the extent that the city is liable for damages Manta incurred during the 53 months the injunction and the stay were in place.

In support of its judgment affirming Manta's damage award against the city, the Court of Appeal focused on whether the city was *immune from liability* because it had relied in good faith "on a preliminary injunction duly issued by a trial court." It relied upon the holding in *Owen v. City of Independence* (1980) 445 U.S. 622 [63 L.Ed.2d 673, 100 S.Ct. 1398], that "municipalities have no immunity from damages liability flowing from their constitutional violations . . ." (*id.* at p. 657), as the basis for its conclusion that the city's act of obtaining an injunction to enforce an unconstitutional ordinance is an act in violation of the First Amendment within the meaning of section 1983, and that "the city's good faith reliance on the trial court's issuance of the preliminary injunction does not provide it with immunity."

However, the critical question is not whether the city is immune from liability, but whether the city's seeking a preliminary injunction and a stay were *acts* in violation of the First Amendment that *caused* injury to Manta for which the city could conceivably be liable under section 1983. The question of immunity would only become relevant if defendant caused the harm. Indeed, the city does not assert immunity in this case. Instead, it questions "whether there is any initial liability under federal law" for its actions in obtaining a preliminary injunction and stay. In response, Manta argues that the city caused the constitutional violation because the courts would not have issued the overbroad injunction and the stay unless the city had requested them; Manta claims the city is liable for its damages because the courts were enforcing the unconstitutional ordinance "at the City's request."

Cities have been found liable for damages based on official action to enforce an ordinance later determined to be unconstitutional in a variety of contexts. (See, e.g., *RK Ventures, Inc. v. City of Seattle* (9th Cir. 2002) 307 F.3d 1045, 1050–1063 [plaintiff could maintain § 1983 action for damages resulting from prosecution of civil abatement action based on an unconstitutional ordinance]; *Grossman v. City of Portland* (9th Cir. 1994) 33 F.3d 1200, 1203–1210 [city liable for arrest pursuant to an unconstitutional ordinance]; *Gerritsen v. City of Los Angeles, supra*, 994 F.2d at pp. 575–578, 580 [city's enforcement of unconstitutional ordinance restricting handbill distribution supported § 1983 action for monetary damages]; *Murray v. City of Sioux Falls* (8th Cir. 1989) 867 F.2d 472, 474, fn. 2. [acknowledged that a city may be liable for damages resulting from an arrest or criminal prosecution pursuant to an ordinance later found unconstitutional]; *AAK, Inc. v. City of Woonsocket* (D.R.I. 1993) 830 F.Supp. 99, 100–101, 105 [imposition of higher licensing fee on an adult cabaret than on similar entertainment businesses supported claim for monetary damages]; *Pesticide Public Policy v. Village of Wauconda* (N.D.Ill. 1985) 622 F.Supp. 423, 433–434 [enforcement of invalid ordinance regulating pesticide use supported claim for damages]; *Negin v. City of Mentor, Ohio* (N.D.Ohio 1985)

601 F.Supp. 1502, 1505 [city liable for damages resulting from unconstitutional application of zoning ordinance].) Significantly, however, none of the cases cited above involved a situation in which a court sanctioned the city's enforcement of its ordinance before the ordinance was found to be unconstitutional.

More closely analogous to our case is *Townes v. City of New York* (2d Cir. 1999) 176 F.3d 138 (*Townes*). There, the plaintiff's section 1983 complaint alleged that he was subjected to an unconstitutional stop and search by the defendant police officers while he was a passenger in a taxicab. The plaintiff moved to suppress the evidence found during that search in state criminal proceedings, but the motion was denied. He was convicted based on that evidence, but the conviction was overturned by a state appellate court on the ground that the evidence should have been suppressed because it was obtained in violation of the plaintiff's Fourth Amendment rights. The plaintiff did not seek damages "for [the] specific invasions of his privacy, but rather for injuries derivative of these invasions—his arrest, conviction, and incarceration." (176 F.3d at p. 141.) While agreeing that the stop and search had violated the plaintiff's Fourth Amendment rights (176 F.3d at p. 144), the Second Circuit held that the alleged injuries were not "fairly traceable to the actual violations of his civil rights." (*Id.* at p. 141.) It held that the "state trial court's exercise of independent judgment in deciding not to suppress the evidence, though later ruled to be erroneous, broke the chain of causation for purposes of § 1983 liability for the plaintiff's conviction and incarceration." (*Id.* at p. 147.) The court relied on the "well settled" principle "that the chain of causation between a police officer's unlawful arrest and a subsequent conviction and incarceration is broken by the intervening exercise of independent judgment . . . in the absence of evidence that the police officer misled or pressured the official who could be expected to exercise independent judgment." (*Ibid.,* citations omitted.) After noting that there was no claim of such evidence, the court held that plaintiff Townes could not recover damages for his conviction and incarceration from the police officers who handled the stop and search. (*Ibid.*)

Recently, the Second Circuit revisited the traditional tort concept of independent intervening cause when considering whether the petitioner could establish a claim against an officer for the erroneous admission at trial of testimony regarding an unduly suggestive identification. (*Wray v. City of New York* (2d Cir. 2007) 490 F.3d 189.) Using language similar to that in its *Townes* decision, the court ruled that "extending liability to [the officer] is unprecedented and unwarranted. In the absence of evidence that [the officer] misled or pressured the prosecution or trial judge, we cannot conclude that his conduct caused the violation of Wray's constitutional rights; rather, the

violation was caused by the ill-considered acts and decisions of the prosecutor and trial judge." (*Id.* at p. 193.)

Another federal case in which the defendant's conduct was followed by a court's exercise of independent judgment is *Egervary v. Young* (3d Cir. 2004) 366 F.3d 238 (*Egervary*). In that case, government officials, as well as attorneys, urged a federal district court to make a particular decision. The judge made that decision, which ultimately turned out to be erroneous. In deciding whether the government officials were liable for section 1983 damages suffered by the plaintiffs as a result of the judge's decision, the Third Circuit applied common law tort causation principles in concluding that "an intervening act of a third party, which actively operates to produce harm after the first person's wrongful act has been committed, is a superseding cause which prevents the first person from being liable for the harm which his antecedent wrongful act was a substantial factor in bringing about." (*Egervary, supra,* 366 F.3d at p. 246, citing Rest.2d Torts, §§ 440–441; see also *McCabe v. Ernst & Young, LLP* (3d Cir. 2007) 494 F.3d 418, 436.) With regard to the specific factual situation before it, the court held that, "where, as here, the judicial officer is *provided with the appropriate facts to adjudicate the proceeding* but fails to properly apply the governing law and procedures, such error must be held to be a superseding cause, breaking the chain of causation for purposes of § 1983 . . . liability." (*Egervary, supra,* 366 F.3d at pp. 250–251, italics added.) Citing *Townes,* the circuit court similarly exempted from its general holding instances in which the judicial officer reached an erroneous decision as a result of being misled as to the relevant facts. (*Id.* at p. 250.) The court added that its conclusion was "not inconsistent with" the holding in *Lanier v. Sallas* (5th Cir. 1985) 777 F.2d 321, 324–325, that "a judge's decision to commit plaintiff to a mental health facility did not sever the chain of causation where that decision was based in part on a misrepresentation made by defendants." (*Egervary, supra,* 366 F.3d at p. 249.)

The Fifth Circuit reached a similar result in *Murray v. Earle* (5th Cir. 2005) 405 F.3d 278. There, a plaintiff juvenile sought damages under section 1983 from defendant detectives. The juvenile alleged that a confession coerced from her by the detectives was improperly admitted into evidence in her delinquency proceeding, in violation of the Fifth Amendment privilege against self-incrimination and that the violation of her civil rights caused "her later-reversed conviction (and lengthy incarceration) for injury to a child." (*Murray v. Earle,* at p. 282.) The court acknowledged the "fundamental tension" between two "primary tenets of tort law: (1) An individual is liable for reasonably foreseeable consequences of his actions, and (2) an intervening decision of an informed, neutral decision-maker 'breaks' the chain of causation." (*Id.* at p. 292.) It then held that the trial judge's ruling, albeit an

incorrect one, to admit the confession "constituted a superseding cause of [the plaintiff's] injury, relieving the defendants of liability under § 1983." (*Id.* at p. 293.) The court reasoned that, "as in the analogous context of Fourth Amendment violations, an official who *provides accurate information to a neutral intermediary,* such as a trial judge, cannot 'cause' a subsequent Fifth Amendment violation arising out of the neutral intermediary's decision . . . ." (*Ibid.,* italics added; see also *Shields v. Twiss* (5th Cir. 2004) 389 F.3d 142, 150 [placing facts supporting an arrest before an independent intermediary breaks the chain of causation unless plaintiff affirmatively shows the intermediary's deliberations were tainted by actions of the defendant].)

In *Jones v. Cannon* (11th Cir. 1999) 174 F.3d 1271, 1287, the court similarly held that "the grand jury indictment broke the chain of causation for the detention from the alleged false arrest . . . . [Citation.] The intervening acts of the prosecutor in presenting the murder case to the grand jury and of the grand jury returning the indictment broke the chain of causation for any detention of Jones that followed the grand jury indictment."

A sister state court considered questions similar to those before us. After distinguishing its case from those in which factual misrepresentations or misconduct misled the court issuing the injunction, the Michigan court concluded that "[t]he direct 'cause' of the [First Amendment] violation here was the court's issuance of the overbroad injunction, not plaintiff's pursuit thereof." (*Mayor of Lansing v. Knights of the Ku Klux Klan* (1997) 222 Mich.App. 637, 645 [564 N.W.2d 177, 180] (*Mayor of Lansing*).)

We note that, in our state, in a context other than § 1983 litigation, the Court of Appeal found the exercise of independent judgment by a court constitutes an independent superseding cause. (*Brewer v. Teano* (1995) 40 Cal.App.4th 1024 [47 Cal.Rptr.2d 348].) In that case, according to the plaintiff's complaint and reasonable inferences from its allegations, Teano negligently and recklessly drove his car so that it repeatedly collided with a car driven by Brewer. Fearful that he would be assaulted by Teano if he stopped, Brewer left the scene. A bystander saw him leave the accident scene and contacted the police. Brewer was arrested for hit and run. Brewer stood trial for felony hit and run and was acquitted. He then sued the estate of Teano, who had died, seeking compensation for damage to his car, for physical injury and emotional distress, and for expenses incurred as a result of the arrest and prosecution. (*Id.* at p. 1027.) Relying on the Restatement Second of Torts,[6] the appellate court concluded that "the decision of the

---

[6] The Restatement Second of Torts, section 440, defines a superseding cause as "an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about."

prosecutor to file felony charges against plaintiff, and of the magistrate to hold him to answer those charges, were superseding acts for which Teano's estate is not liable." (*Brewer, supra,* 40 Cal.App.4th at p. 1027.) After noting the multiple separate steps that led to the prosecution of a criminal trial, the court concluded that "it cannot be said that the intervening force consisting of the prosecution of formal criminal charges against plaintiff was 'foreseeable' from Teano's conduct, however characterized. The harm from that proceeding was different in kind from that which may be expected to result from the kind of conduct alleged in this case. ([Rest.2d Torts,] § 442, com. (a).) It is an extraordinary rather than a normal result of Teano's act. (*Id.,* com. (b).) The decision of prosecutors to file against plaintiff, and of the magistrate or grand jury to hold him to answer [on] felony charges, operated independently from anything that Teano did; they cannot be described as a normal result of his negligent driving. (*Id.,* com. (c).)" (*Id.* at p. 1037.)[7]

■ We find the reasoning in the above federal and state cases that have analyzed similar factual situations in terms of independent superseding causation to be persuasive. We also agree with those cases that find an exception to the principle of superseding causation when the party seeking an injunction or stay pending appeal either misled or pressured the court, which was expected to exercise independent judgment. Accordingly, we hold that, where a court is provided with appropriate facts to adjudicate a motion for preliminary injunction or a motion for a stay pending appeal, the courts' intervening exercise of independent judgment breaks the chain of causation for purposes of section 1983 liability.[8] We also hold that this general rule of superseding causation does not apply when the judicial officer reached an erroneous decision as a result of being pressured or materially misled as to the relevant facts.

The city contends the only exception to the rule that exercise of independent judgment by the court breaks the chain of causation "is if material facts are either *intentionally* misstated or *intentionally* withheld," and it claims that *Mayor of Lansing* recognized an exception to the rule if the party seeking an injunction "intentionally misled the court." To the contrary, *Mayor of Lansing,* consistent with other cases on the issue of superseding intervening cause, held that the court's exercise of independent judgment broke the chain of causation because the section 1983 defendants did not engage in any

---

[7] Our conclusion here is consistent with the United States Supreme Court's comment in *Malley v. Briggs* (1986) 475 U.S. 335, 344, footnote 7 [89 L.Ed.2d 271, 106 S.Ct. 1092], that section 1983 "should be read against a background of tort liability that makes a man responsible for the consequences of his actions," and thus judicial action will not constitute a superseding causation when the party seeking the action provides materially misleading information in its support.

[8] To the extent that *Gill v. Epstein* (1965) 62 Cal.2d 611, 617–618 [44 Cal.Rptr. 45, 401 P.2d 397], held to the contrary, it is disapproved.

wrongdoing and because they "did not make misrepresentations that would have undermined the trial court's ability to perform its adjudicative function or to exercise its discretion." (*Mayor of Lansing, supra,* 564 N.W.2d at p. 183.) *Newman v. County of Orange* (9th Cir. 2006) 457 F.3d 991, also cited by the city, similarly recognizes that a plaintiff can produce evidence of material omissions or conflicting evidence to rebut a presumption that a court or prosecutor exercised independent judgment. (*Id.* at p. 993–994.) In fact, the majority of cases that discuss the exception to the break in the chain of causation do not focus on whether the party seeking the injunction *intentionally* misled the official who could be expected to exercise independent judgment. They hold, instead, that the chain of causation is broken by the intervening exercise of independent judgment in the absence of evidence that the party seeking the injunction misled or pressured the official, or did not provide him or her with the appropriate facts to adjudicate the proceeding. (See *Townes, supra,* 176 F.3d at p. 147; *Egervary, supra,* 366 F.3d at pp. 250–251.) After reviewing analogous federal and state cases that discuss the principle of superseding causation and its exception, we conclude Manta does not need to prove that the city's failure to provide the court with accurate information was intentional. Instead, Manta needs to show only that the misrepresentations were material, in that they would have undermined the court's ability to exercise independent judgment on the issues presented.

On the record before us, we cannot determine whether the principle of superseding causation or its exception applies in this case. The parties agree that declarations submitted by the city in support of its request for a preliminary injunction contained misinformation regarding the number of sites and acres within the city on which adult entertainment businesses could operate under the city's ordinance in effect at the time Manta converted its comedy club to an adult cabaret, and Manta asserts that, in support of the issuance of a writ of supersedeas, the city misrepresented to the appellate court that Manta would suffer no irreparable harm because it had a damage remedy. The parties dispute whether some of the factual misstatements were actually misleading and whether any misrepresentations that were made were material in that they "would have undermined the trial court's ability to perform its adjudicative function or to exercise its discretion." (*Mayor of Lansing, supra,* 564 N.W.2d at p. 183.)

As noted above, here, unlike in *Townes, supra,* 176 F.3d at page 147, there is a claim that the city made material misrepresentations regarding the factual basis upon which the preliminary injunction and the writ of supersedeas depended. We remand the matter to allow the trial court to resolve any relevant factual issues and to apply the principles of superseding intervening causation in the first instance. (See, e.g., *Zengen, Inc. v. Comerica Bank* (2007) 41 Cal.4th 239, 259 [59 Cal.Rptr.3d 240, 158 P.3d 800]; *People v. Cahill* (1993) 5 Cal.4th 478, 510 [20 Cal.Rptr.2d 582, 853 P.2d 1037].)

## III. DISPOSITION

For the reasons stated above, we reverse the judgment of the Court of Appeal, and remand the cause to that court with directions to remand it in turn to the superior court with directions to conduct proceedings consistent with the views expressed herein.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Moreno, J., and Corrigan, J., concurred.

Respondent's petition for a rehearing was denied June 18, 2008, and the opinion was modified to read as printed above. George, C. J., Werdegar, J., and Corrigan, J., did not participate therein.