[No. B215298. Second Dist., Div. Five. Mar. 25, 2010.]

THE LUCKMAN PARTNERSHIP, INC., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
DARRELL D. RAMSEY et al., Real Parties in Interest.

## COUNSEL

Collins Collins Muir + Stewart, Brian K. Stewart, Joe A. Bollert, Douglas Fee and Christian E. Foy Nagy for Petitioner.

No appearance for Respondent.

Greene, Broillet & Wheeler, Bruce A. Broillet, Scott H. Carr, Alan Van Gelder; Sonnett & Associates, Anthony E. Sonnett, Sharon E. Sonnett, Vanna Der Ohanessian; Esner Chang & Ellis, Stuart B. Esner and Holly N. Boyer for Real Parties in Interest.

## OPINION

**ARMSTRONG, J.**—Darrell D. Ramsey (Ramsey) and Chenel Ramsey, husband and wife, sued The Luckman Partnership, Inc., for negligence and loss of consortium. After Luckman's motion for summary judgment was denied, it filed a petition for writ of mandate. We issued an alternative writ concluding that plaintiffs' claims were barred by the four-year statute of limitations and/or the 10-year statute of repose (Code Civ. Proc., §§ 337.1, subd. (a), 337.15, subd. (a)), and because subsequent design and construction constituted an independent intervening cause.

The trial court declined to comply with the writ. We now consider the matter on the merits and conclude that Luckman was entitled to summary judgment on the statute of limitations found in Code of Civil Procedure section 337.1, subdivision (a) and under the doctrine of independent intervening cause.[1]

### Facts

On September 1, 2006, Ramsey fell through a suspended ceiling in the west hall of the Los Angeles Convention Center (Convention Center), and suffered injuries. Luckman was the original architect of the Convention Center.

At summary judgment, it was undisputed that at the time of the accident, Ramsey, an employee of an entity called Becon Construction, was working

---

[1] As plaintiffs argue, *Martinez v. Traubner* (1982) 32 Cal.3d 755 [187 Cal.Rptr. 251, 653 P.2d 1046], found that the statute of repose in Code of Civil Procedure section 337.15 applies only to actions for damage to property. Luckman argues that the finding was dictum, and asks us to make a different ruling. This is a controversy we need not entertain.

on telecommunications equipment in the west hall. His work took him to a control room that was elevated 50 feet above the Convention Center floor. The control room was only accessible from catwalks. The catwalks were six feet wide and were enclosed by guardrails: a four-inch toe kick, a midrail that was 16 3/8 inches from the toe kick, and a top rail that was 17 3/8 inches from the midrail and was 42 inches high.

One side of the catwalk in question looked down to the Convention Center floor. The other side looked onto the suspended ceiling. (Luckman's proposed fact was that the ceiling was "several feet" below the catwalk. Plaintiffs asserted that the ceiling was four feet below the catwalk. The difference is not relevant.)

No ladders or stairs led to the suspended ceiling. The only way to get to it was to climb over or through the guardrails on the catwalk. The only way to get to the catwalk was through one of four doors which were kept locked and which could be opened only by Convention Center employees.

During his work, Ramsey dropped a roll of tape onto the suspended ceiling. In order to retrieve it, he climbed through the catwalk's guardrails. In his declaration at summary judgment, he described his actions thus: "I climbed through the space between the top railing and the middle railing. . . . While holding onto the railing with one hand, I tested the floor with one foot, then finding the surface firm, I put the other foot down on the floor. The floor immediately gave way and I fell about five stories to the ground."

Plaintiffs proffered evidence that from the catwalk, the suspended ceiling looked like plywood and did not look like a suspended ceiling, that Ramsey believed that it was a plywood floor, and that from the catwalk Ramsey could not see the ceiling supports, since those supports were under the catwalk.

It was undisputed that Luckman finished its work on the Convention Center in 1971. Luckman also proposed as undisputed that another firm, Gruen, redesigned the suspended ceiling in the west hall after the Northridge earthquake in 1994 and that at that point, the suspended ceiling was removed, redesigned and rebuilt. Luckman supported these facts with a declaration from its attorney in this case. That attorney declared that he had personal knowledge of the matters in his declaration, and that true and correct copies of the City of Los Angeles's (City) response to plaintiffs' interrogatories in this case were attached to the declaration.

In the interrogatory responses, when asked to identify the persons responsible for the design of the suspended ceiling, the City, another defendant herein, answered that "due to extensive damage from the Northridge Earthquake in

January 1994, the suspended ceiling was completely replaced." A lengthy exhibit of plans and specifications was an exhibit to the City's answer.

Plaintiffs' response to the proposed undisputed facts was "immaterial," or "immaterial that Gruen replaced the false ceiling tiles." Plaintiffs also objected to the portions of counsel's declaration authenticating the City's interrogatory responses, writing "Improper authentication of referenced document. Evidence Code section 1401." The court sustained the objections to counsel's declaration.

## Discussion

### Independent intervening cause

Plaintiffs' first claim of negligence is that there was a "false ceiling hazard." This claim is based on the evidence that, from the catwalk, the ceiling appeared to be a plywood floor. However, there was an independent intervening cause of any harm caused by the appearance of the ceiling: the redesign of the ceiling by another firm after the Northridge earthquake.

Plaintiffs argue that we may not find that the redesign of the ceiling was an independent intervening cause, because there was no evidence of that redesign. They rely on the trial court ruling sustaining their objections to the declaration of Luckman's counsel, authenticating the documents on which Luckman relied.

We disagree for several reasons. First, in their response to Luckman's proposed undisputed facts, plaintiffs did not dispute the facts about the redesign, but instead responded that it was immaterial that the ceiling had been redesigned. In our view, the facts are highly relevant, and plaintiffs' failure to dispute the facts admits them. Our view is reinforced by the fact that the underlying evidence—the City's responses to plaintiffs' interrogatories in this case—was also proffered by plaintiffs at summary judgment.

■ Finally, we find that the declaration of Luckman's counsel sufficiently authenticated the documents. Under Evidence Code section 1401, "Authentication of a writing is required before it may be received in evidence." "[A] document is authenticated when sufficient evidence has been produced to sustain a finding that the document is what it purports to be . . . ." (*Jazayeri v. Mao* (2009) 174 Cal.App.4th 301, 321 [94 Cal.Rptr.3d 198].) Here, Luckman's counsel in this case declared that he had personal knowledge that the documents attached to his declaration were the City's verified interrogatory responses in this action, along with exhibits the City attached to its interrogatory responses. Counsel represented a party in this action, and his

declaration was sufficient to show that interrogatory responses in this action were what they purported to be.

These relevant facts were admissible and undisputed, and should have been considered. It is noteworthy, too, that the declaration of plaintiffs' expert safety engineer, David W. Smith, does not address the standard of care and related issues in 1969 through 1971.

Plaintiffs' theory was that the appearance of the ceiling was a legal cause of Ramsey's injury, but the redesign of the ceiling, for which Luckman was not responsible, was not an independent intervening cause. To the extent that liability for Ramsey's injury arises from the appearance of the ceiling, the redesign of the ceiling was the proximate cause of the injury, so that Luckman cannot be liable. (*Manta Management Corp. v. City of San Bernardino* (2008) 43 Cal.4th 400, 412 [75 Cal.Rptr.3d 353, 181 P.3d 159]; *Martinez v. Pacific Bell* (1990) 225 Cal.App.3d 1557, 1566 [275 Cal.Rptr. 878]; *Park v. Burlington Northern Santa Fe Railway Co.* (2003) 108 Cal.App.4th 595, 611 [133 Cal.Rptr.2d 757].)

### *Statute of limitations*

■ Plaintiffs' second claim of negligence is that Luckman was negligent because the guardrails had been designed in a manner which meant that there was enough space between the rails for Ramsey to climb through. Plaintiffs contend that the rails should have been constructed in a manner which prevented him from doing so. These claims are barred by the statute of limitations.

■ Under Code of Civil Procedure section 337.1, subdivision (a), "Except as otherwise provided in this section, no action shall be brought to recover damages from any person performing or furnishing the design . . . of construction or construction of an improvement to real property more than four years after the substantial completion of such improvement for any of the following: [¶] (1) Any patent deficiency in the design . . . ." "Patent deficiency" is defined in the statute as "a deficiency which is apparent by reasonable inspection." (Code Civ. Proc., § 337.1, subd. (e).)

Thus, a patent defect is one that can be discovered by the kind of inspection made in the exercise of ordinary care and prudence. In contrast, a latent defect is hidden, and would not be discovered by a reasonably careful inspection. (*Preston v. Goldman* (1986) 42 Cal.3d 108, 123 [227 Cal.Rptr. 817, 720 P.2d 476].)

"The test to determine whether a construction defect is patent is an objective test that asks 'whether the average consumer, during the course of a reasonable inspection, would discover the defect. . . .' [Citations.] This test generally presents a question of fact, unless the defect is obvious in the context of common experience; then a determination of patent defect may be made as a matter of law (including on summary judgment). [Citations.]" (*Creekridge Townhome Owners Assn., Inc. v. C. Scott Whitten, Inc.* (2009) 177 Cal.App.4th 251, 256 [99 Cal.Rptr.3d 258].) Our review of an order denying summary judgment is de novo. (*Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 579 [37 Cal.Rptr.2d 653].)

In *Mattingly v. Anthony Industries, Inc.* (1980) 109 Cal.App.3d 506 [167 Cal.Rptr. 292], the alleged defect was the lack of a fence around a swimming pool. The court held that "[t]he swimming pool and the dangers attendant thereto as they relate to the absence of fencing are matters of such common experience that assuming, arguendo, the absence of a fence constitutes a deficiency in our situation, it is a patent deficiency . . . ." (*Id.* at pp. 510–511.)

Here, the spacing of the rails was obvious, and the dangers attendant to climbing through guardrails on a catwalk are, like the dangers of an unfenced swimming pool, a matter of common experience. Guardrails on a catwalk exist to keep the catwalk user away from the adjacent space, and thus protect the user from risk of harm. Importantly, there were guardrails on *both* sides of this catwalk, not just the side open to the Convention Center floor. The guardrails themselves constituted a warning that the user should stay on the catwalk and that the surface below was unsafe. The fact that Ramsey first tested the ceiling with one foot, while gripping the guardrail, demonstrated that the warnings were effective, and that he at least to some extent understood the danger. Any defects were patent.

Finally, plaintiffs contend that Luckman was negligent because there were no warnings alerting catwalk users to the fact that the suspended ceiling was not in fact a floor. Given that Luckman did not design the suspended ceiling, we do not see that it can be liable for any lack of warnings about that ceiling or its lack of a cover. Further, as we have already found, the guardrails themselves constituted a warning.

## Disposition

The petition for writ of mandate is granted. The trial court is ordered to enter an order granting Luckman's motion for summary judgment. Luckman to recover costs in this proceeding.

Kriegler, J., concurred.

**TURNER, P. J.,** Concurring.—I concur in the issuance of our writ of mandate. I would limit the basis for issuance of our writ of mandate to the independent intervening cause ground synthesized in a different context in *Manta Management Corp. v. City of San Bernardino* (2008) 43 Cal.4th 400, 412 [75 Cal.Rptr.3d 353, 181 P.3d 159] which was before the respondent court when the joint summary judgment motions were denied.