Filed 5/25/16  Baker v. Charles R. Drew University of Med. and Science CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| RICHARD BAKER, | B264330 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC544253) |
| v. | |
| CHARLES R. DREW UNIVERSITY OF MEDICINE AND SCIENCE, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  William F. Fahey, Judge.  Affirmed.

Law Offices of Mokri & Associates, Brad A. Mokri and Jennifer N. Harris; Law Offices of Eric V. Luedtke and Eric V. Luedtke for Plaintiff and Appellant.

Peckar & Abramson, Eric M. Gruzen and Kerri Sakaue for Defendant and Respondent.

Richard Baker (appellant) appeals from a final judgment entered after the trial court granted summary judgment against appellant and in favor of Charles R. Drew University of Medicine and Science (CDU) on appellant's claims of age discrimination; failure to prevent discrimination; whistle-blowing; retaliation under the Fair Employment and Practices Act (FEHA) (Gov. Code, § 12900 et seq.); and termination in violation of public policy.[1]

Appellant argues that the trial court erroneously sustained CDU's objections to appellant's evidence in support of his opposition to the motion for summary judgment, and that triable issues of fact exist as to his causes of action for age discrimination, failure to prevent discrimination, whistle-blowing, and retaliation.

We find no reversible error and affirm the judgment.

## FACTUAL BACKGROUND

CDU is a private, nonprofit, nonsectarian medical and health sciences institution. David Carlisle, M.D., Ph.D. (Dr. Carlisle), is the President and Chief Executive Officer (CEO) of CDU and has served in this capacity since July 2011. Dr. Carlisle is African-American and was born on September 15, 1954.

Appellant is African-American and was born on October 22, 1952. He served as dean of CDU from 2007 until June 4, 2012. In 2010, appellant was appointed provost, and served in that capacity in addition to his role as dean. Appellant served in the positions of provost and dean subject to termination at any time without cause. He served at the pleasure of the president of CDU.

Daphne Calmes, M.D. is the current interim dean of CDU. She was appointed to the position by Dr. Carlisle to replace appellant. Dr. Calmes is African-American and her date of birth is August 3, 1956.

---

[1] The trial court had previously sustained without leave to amend the demurrer of CDU and individual defendants James Main and David Carlisle to appellant's cause of action for harassment under FEHA, and the demurrer of Main and Carlisle to appellant's cause of action for wrongful termination.

2

CDU receives monetary funds from the Regents of the University of California (Regents or UC) through two sources. First, CDU receives funds from the Regents based on the Undergraduate Medical Agreement (UME agreement) dated July 1, 2008. Second, CDU receives funds from the Regents through Senate Bill No. 1026 (SB 1026) (Stats. 1973 (1973-1974 Reg. Sess.) ch. 1140, §§ 1-5, pp. 2341-2342).

The UME agreement provides that the funds received by CDU under the agreement should be used for "'financial support adequate for the success of the Program and required capital improvements.'" The "Program" is the "'cooperative medical and health sciences education program(s) in which the University undergraduate students will be admitted into and receive instruction as part of a cooperative CDU/UCLA program.'"

SB 1026 provides that funds appropriated under SB 1026 will be provided for the support of a program of clinical health sciences, education, research and public service to be conducted by the Charles R. Drew Postgraduate Medical School in conjunction with the University of California at Los Angeles (UCLA). Specifically, the funds must be used to implement the following programs:

> "(a) A program of continuing education of physicians and other health professionals and consumers of health services.
>
> "(b) A program of community medicine designed to improve the health status of the citizenry, the health care delivery system and health sciences education program.
>
> "(c) A program of internship and residencies including, specifically, a family practice residency program at the Martin Luther King Hospital and such other facilities and clinics as may be appropriate.
>
> "(d) Such other programs of clinical health sciences education, research, and public service as the regents and Charles R. Drew Postgraduate Medical School deem in the public interest, provided that the programs herein specified are first funded."

(Stats. 1973, *supra*, ch. 1140, § 2, p. 2342.)

CDU provides an audit to the Regents on an annual basis stating how the funds obtained as a result of the UME agreement and SB 1026 are used by CDU.

3

During appellant's time as dean of CDU, he believed CDU may have been misallocating state funds in violation of SB 1026.

In 2007, the County of Los Angeles closed Martin Luther King Hospital. When the hospital closed, CDU closed the community medicine program and the residency program.[2] Appellant notified the State of California that CDU did not have a residency program. Starting in 2007, appellant had conversations with the office of the president of the UC system. Appellant was informed that CDU was out of compliance with respect to the UME agreement and SB 1026.

Appellant testified that he repeatedly told Dr. Carlisle about the misallocation of funds. Appellant claims that he complained about such misuse of funds throughout his tenure as dean of CDU. He first raised it with Dr. Carlisle in July of 2011 shortly after Dr. Carlisle became president of CDU. Appellant brought up the issue several times with Dr. Carlisle with little response. In December 2011, and again in May 2012, appellant sent emails addressing the noncompliance. The May 31, 2012 email to Dr. Carlisle stated, in part:

> "'The budget allocation to the CDU College of Medicine for the academic year 2011-2012 and the projected budget allocation for the academic year 2012-2013 are significantly out of compliance with current agreements between University of California (UC) and CDU relative to the allocation and use of funds for the CDU/UCLA medical education program.'"

Appellant did not complain to anyone outside of CDU that CDU was not in compliance with its agreements with the Regents. Appellant stated that this was because he was unsure whether or not CDU and the Regents had entered into another agreement regarding the allocation of funds. When Dr. Carlisle took over the position of president of CDU in 2011, appellant requested that they develop a plan to present to the Board of Trustees to determine how to get back into compliance. Dr. Carlisle made it clear that

---

[2]     The hospital closure prevented CDU from having a residency program as set forth under SB 1026. However, appellant testified that CDU could still have a health care delivery system.

4

during his tenure appellant was not to communicate directly with the Board of Trustees or with UC.

Appellant noticed that the budget proposal for 2011-2012 designated restricted funds as unrestricted. The funds should have been designated as restricted to the obligations set forth by the Regents. Appellant informed CDU Chief Financial Officer (CFO) Ron Lau and others that the funds should have been designated as restricted. Nevertheless, CDU continued to designate the funds as unrestricted. Appellant was informed by the chief operating officer, James Main, that all funds were used at the discretion of the president. During the budget discussions, appellant asked Mr. Main to allocate more money to the College of Medicine. Appellant submitted a budget of over $5 million. Mr. Main did not allocate the funds appellant requested, and appellant was terminated.

Dr. Carlisle testified that he informed appellant during the 2011-2012 academic year that CDU provides an accounting to UCLA and the Regents regarding the use of funds. Dr. Carlisle informed appellant that the Regents were aware of how CDU was allocating the funds received as a result of the UME agreement and SB 1026, and that the Regents had agreed that CDU's use of the funds was acceptable.

Appellant claimed that he refused to sign the last audit produced during his tenure due to discrepancies.

Upon the commencement of Dr. Carlisle's term as president and CEO of CDU in July 2011, he decided to allow appellant to continue in his role as CDU's dean and provost. As the 2011-2012 academic year progressed, Dr. Carlisle began to lack confidence in appellant's ability to meet his expectations for those positions. In late April 2012, Dr. Carlisle made the decision that appellant should no longer serve as dean and provost. Dr. Carlisle decided to replace appellant with Dr. Calmes in the position of dean while Dr. Carlisle took over the position of provost for the following year.

In his declaration, Dr. Carlisle stated his decision to remove appellant as CDU's dean and provost was not related in any way to appellant's age or race. In addition, Dr. Carlisle's decision to remove appellant as CDU's dean and provost was not in any

5

way related to any concerns or complaints appellant may have had or made regarding CDU's use of funds obtained by CDU via the UME agreement or SB 1026.

On June 4, 2012, Dr. Carlisle informed appellant that he would no longer serve as dean and provost. While appellant was removed from these positions, he remained a member of the faculty of CDU in an uncompensated position, though he continued to receive compensation through June 30, 2013, as an accommodation by Dr. Carlisle to ease the transition.

At no time during his employment with CDU did appellant complain of discrimination based upon his age or race. Appellant is unaware of anyone making any derogatory comments about him based upon his age or race. CDU maintains a policy of no retaliation and is also partnered with MySafeCampus to operate an Alert Line. Reports submitted to MySafeCampus are confidential and anonymous and are submitted to CDU's internal audit and control services department. Appellant never utilized this service despite being informed of it by CDU's chief human resources officer on May 25, 2012. Appellant had no belief that Dr. Carlisle harbored any animosity towards him because of his age or race. In his complaint filed with the Department of Fair Employment and Housing, appellant did not allege that he was subjected to discrimination, retaliation or harassment because of his race. The complaint does allege discrimination, harassment and retaliation on the grounds of age and engagement in protected activity.

## PROCEDURAL HISTORY

On April 30, 2014, appellant filed this lawsuit against CDU, Mr. Main and Dr. Carlisle, alleging six causes of action: (1) age discrimination; (2) violation of Government Code section 12940 (failure to prevent discrimination); (3) whistle-blowing; (4) retaliation under FEHA; (5) harassment under FEHA; and (6) termination in violation of public policy.

On July 7, 2014, CDU, Mr. Main and Dr. Carlisle filed a demurrer to the complaint. The trial court sustained the demurrer without leave to amend as to the fifth

6

cause of action for harassment as to all defendants, and to the sixth cause of action for wrongful termination in violation of public policy as to Mr. Main and Dr. Carlisle only.

On January 5, 2015, CDU filed its motion for summary judgment or, in the alternative, summary adjudication (summary judgment motion). On March 6, 2015, appellant filed his opposition to the summary judgment motion. On March 13, 2015, CDU filed its reply brief. Appellant filed a supplementary declaration on March 18, 2015. CDU filed 68 evidentiary objections to the declarations filed by appellant in opposition to the summary judgment motion.

At the March 20, 2015 hearing on the summary judgment motion, counsel appeared and argued and the court took the matter under submission. On March 25, 2015, the court filed its ruling on CDU's evidentiary objections, sustaining all but eight of the 68 objections. On March 26, 2015, the court issued a minute order granting CDU's motion for summary judgment.

The court's order stated that on October 7, 2014, the court sustained, without leave to amend, the demurrers as to the fifth and sixth causes of action, leaving four causes of action as to CDU only.[3] The court noted that CDU filed three declarations and multiple exhibits in support of its motion, and that appellant failed to file any objections to CDU's evidence, thus it was all fully admissible. The court also noted that CDU filed objections to appellant's declaration, most of which were well taken. Further, appellant's attorney was not qualified to authenticate certain items and CDU's objections to this evidence were sustained. The court pointed out that appellant provided no evidence that he was replaced by a significantly younger person, or that he had engaged in protected activity and was thereafter subject to an adverse employment action, or that there was a causal link between the two. In addition, appellant provided no evidence that he had a reasonable belief that CDU violated a state or federal statute, or was in noncompliance with a state or federal rule or regulation; that CDU made or enforced any rule preventing

---

**3** In fact, the demurrer to the sixth cause of action for wrongful termination in violation of public policy was sustained as to the individual defendants Mr. Main and Dr. Carlisle only, and remained viable as to CDU.

7

appellant from disclosing information to a government or law enforcement agency; that appellant disclosed any such information to such an agency; or that appellant refused to participate in an activity that would result in a violation of a state or federal statute or was in violation of a federal rule or regulation. The court concluded that there were no genuine issues of fact for trial.

On May 21, 2015, appellant filed his notice of appeal from the trial court's judgment.

## DISCUSSION

### I. Standards of review

We review a grant of summary judgment de novo, deciding independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. (*Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 253 (*Nazir*).) The appellate court's task is to make "'an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court . . . .' [Citations.]" (*Brundage v. Hahn* (1997) 57 Cal.App.4th 228, 234-235.) We review evidentiary rulings for abuse of discretion. (*Nazir, supra*, at p. 255.) We uphold the judgment if it is correct on any ground, regardless of the reasons the trial court gave. (*Bunnell v. Department of Corrections* (1998) 64 Cal.App.4th 1360, 1367 (*Bunnell*).)

### II. The evidentiary objections

We first address the trial court's evidentiary rulings. CDU filed 68 objections to appellant's evidence submitted in opposition to CDU's summary judgment motion. Appellant disputes the trial court's decision to sustain CDU's objections to evidence attached to the declaration of appellant's attorney, Jennifer N. Harris, including exhibit R, the SB 1026 legislation; exhibit S, the UME agreement; and exhibits P, Q, and T, containing discovery responses. Appellant further disputes the trial court's decision to sustain objections to almost all of appellant's declaration. Appellant maintains that the excluded evidence raises triable issues of fact.

We address each of the evidentiary rulings separately, keeping in mind that under the abuse of discretion standard of review, appellate courts will not disturb discretionary

8

trial court rulings absent a clear case of abuse and a miscarriage of justice. (*Association for Los Angeles Deputy Sheriffs v. Los Angeles Times Communications LLC* (2015) 239 Cal.App.4th 808, 824.)

### A. *Harris declaration: exhibit R (SB 1026 legislation) and exhibit S (UME agreement)*

Attorney Harris stated in her declaration, "A true and correct copy of the SB 1026 legislation is attached hereto as Exhibit R." CDU objected on the grounds of hearsay and multiple hearsay (Evid. Code, §§ 1200, 1201); inadmissible opinion (§ 803); lacks foundation (§ 403); and unauthenticated document (§§ 1271, subd. (c); 1401). The trial court sustained CDU's objection to this piece of evidence on the ground that Attorney Harris was not qualified to properly authenticate this item.

Attorney Harris further declared: "A true and correct copy of the UME Agreement is attached hereto as Exhibit S." CDU objected to exhibit S on the same grounds as it objected to exhibit R, and the objection was sustained.

Appellant points out that these two exhibits were also offered by CDU, and admitted.[4] In ruling on a summary judgment motion, a trial court is required to "'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom [citation]." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) We must assume that the trial court followed the law and considered these two exhibits. In fact, the court stated in its ruling that all of CDU's evidence "has been considered by the Court."

Because SB 1026 and the UME agreement were admitted into evidence and considered by the court in rendering its decision on the summary judgment motion, we find appellant's arguments to be moot. A question is moot if we cannot grant the appellant any effectual relief. (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1574.) Where, as here, the court admitted and considered the

---

[4] Appellant filed no evidentiary objections to CDU's evidence, and the trial court thus found CDU's evidence "fully admissible." All of CDU's evidence was considered by the court.

exhibits in question, there will be no change in the judgment if the contested evidentiary rulings are reversed.  Therefore we do not address them further.

### B.  *Appellant's declaration*

CDU filed 16 objections to the declaration of appellant filed in support of appellant's opposition to the motion for summary judgment.  Three of them were overruled, the rest were sustained.  We note that although the objections and rulings were numbered, appellant does not specify which rulings he is addressing at any time throughout his discussion.  We therefore take our best guess as to the specific rulings being referenced in appellant's discussion.

Appellant argues that the trial court excluded evidence of appellant's accomplishments.  Appellant argues that these accomplishments go straight to the credibility of Dr. Carlisle's testimony that appellant was terminated for lack of confidence.  We assume that appellant is referring to CDU's objection No. 2, in which CDU objected to evidence of "Examples of major CAO contributions to the COM educational enterprise" listing seven such alleged contributions.  CDU objected to the evidence on the grounds of relevance, hearsay, vague and ambiguous as to "CAO," lacks foundation, and failure to state any facts upon which the evidence is based.  Appellant fails to address the merits of any of these objections, with the exception of relevance.  As the party challenging the court's decision, it is appellant's burden to establish an abuse of discretion as to the court's evidentiary rulings.  (*DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 679 (*DiCola*).)  Because appellant has failed to address CDU's objections that the evidence is vague as to "CAO," lacks foundation, and fails to identify any facts upon which it is based, we decline to find that the trial court abused its discretion in excluding the evidence.

Appellant next notes that the court sustained an objection to appellant's declaration showing that Dr. Carlisle never complained about a lack of confidence until the day appellant was terminated on or about June 4, 2012.  We assume appellant is addressing CDU's objection No. 6, pursuant to which CDU objected to the following testimony in appellant's declaration:

10

"By his own testimony, Dr. Carlisle's first communication of any kind and to anyone about his 'lack of confidence' in me as the Dean and Provost was during the meeting on 6/4/2012 when he removed me from those positions. The date of my termination (6/4/2012) was the first business day immediately subsequent to Dr. Carlisle's receipt of documents on 5/30/12, 5/31/12 and 6/1/12 that document and infer Dr. Carlisle's inappropriate allocation of funds from UC and the State. The temporal relationship of the three documents received by the President and the COO strongly speaks to the motivation for terminating me in an immediate and abrupt manner on June 4, 2012."

CDU objected to this testimony on the grounds of hearsay regarding all discussions alleged or Dr. Carlisle's "own testimony" (Evid. Code, § 1200), inadmissible opinion (§ 803), lacks foundation as none of Dr. Carlisle's testimony was attached (§ 403), failure to identify any factual evidence on which the opinion is based (*Taliaferro v. Taliaferro* (1962) 203 Cal.App.2d 649, 651 (*Taliaferro*), speculation (§ 800), and relevance (§§ 210, 350-351).

Again, appellant addresses none of these specific objections other than relevance, and merely repeats the facts that are set forth in the declaration. Appellant cites no case law addressing any of CDU's other objections or suggesting that the trial court erred in sustaining the objections under any of those provisions. This is insufficient to carry the burden of showing an abuse of discretion.

Appellant argues that the trial court improperly excluded evidence that Dr. Carlisle never explained to appellant why he was terminated or gave any business reason for the termination. CDU's objection Nos. 7 and 8 address references to emails and a letter in which appellant allegedly expressed concerns about inappropriate allocation of funds, as well as appellant's testimony that "Dr. Carlisle had full opportunity over an extended time period, to do a full performance evaluation of me . . . and/or to formally document (in written communication) my alleged deficiencies relative to meeting expectations, neither of which were done." CDU objected to this evidence on the grounds of hearsay (Evid. Code, § 1200), unauthenticated documents (§§ 1271, subd. (c), 1401), inadmissible opinion (§ 803), lacks foundation (§ 403), fails to identify any factual

11

information to show what the opinion is based on (*Taliaferro, supra*, 203 Cal.App.2d at p. 651), relevance (§§ 210, 350-351), and as to objection No. 8, improper expert testimony (§ 720).

Again, appellant's argument consists of mainly a repetition of the evidence and its alleged significance. None of the specific objections are addressed with legal authority. This fails to meet appellant's burden of showing an abuse of discretion.

Appellant complains that the trial court excluded appellant's testimony showing he had reasonable cause to believe there was violation of a state statute. (See Labor Code, § 1102.5, subdivision (b) [an employer shall not retaliate against an employee for disclosing information to anyone who has the authority to investigate or correct the violation if the employee has reason to believe that the information discloses a violation of a state or federal statute].) We assume appellant is addressing CDU's objection Nos. 13 and 14, in which CDU objected to appellant's testimony that he had complained about the misallocation of UC and state funds and had provided Dr. Carlisle via email detailed information on UC contractual obligations, UC GME funds, UCLA clerkship funds and SB 1026, in support of an ensuing meeting between appellant and Dr. Carlisle on this topic. Again, CDU provided at least six objections to this testimony, based on various Evidence Code provisions. Appellant provides no legal argument establishing an abuse of discretion.

Appellant next addresses the trial court's exclusion of appellant's testimony that at the time he was terminated he was the oldest African-American on the senior management team, and that all members who were as old or older than he who were retained or subsequently hired were Caucasian. Appellant argues that he had knowledge of his age and race at the time he was terminated, thus this evidence was not speculative. In addition, appellant argues it was relevant to his discrimination claims. However, it is not. The trial court noted in its decision that "at the March 20, 2015 hearing, [appellant's] counsel conceded that [appellant] is not making any claims based on his

12

race." Appellant has not challenged or appealed this finding. Therefore, references to appellant's race are irrelevant, and the trial court did not abuse its discretion in so ruling.[5]

Finally, appellant raises the trial court's exclusion of appellant's testimony that Dr. Carlisle explicitly forbade him from direct communication with the UC Office of the President or with any members of the CDU Board of Trustees. Appellant argues that this evidence shows a violation of Labor Code section 1102.5, subdivision (a), which makes it unlawful for Dr. Carlisle to prevent appellant from disclosing this information to a government agency.

Appellant's argument appears to be a reference to CDU's objection No. 15, in which CDU objected to the following paragraph:

> "Dr. Carlisle explicitly forbade me . . . from direct communication with the UC Office of the President (UCOP) or with any members of the CDU Board of Trustees. Despite the fact that all concerns relative to my complaints could have been definitively addressed and all contractual obligations to UC and the State clearly delineated in a meeting involving UCOP, the CDU President, and the CDU Dean, this meeting was never allowed to happen. Finally, on numerous occasions, I have asked Dr. Carlisle to provide some written indication from the UCOP that the prevailing agreements known to [appellant] are no longer in force and this change has been approved by UC. No such document has ever been produced."

CDU objected to this paragraph on the grounds of hearsay (Evid. Code, § 1200) as to what Dr. Carlisle said and what appellant allegedly asked Dr. Carlisle; lack of personal knowledge (§ 702, subd. (a)), inadmissible opinion (§ 803), lacks foundation (§ 403), failure to identify any factual evidence upon which the opinion is based (*Taliaferro, supra*, 203 Cal.App.2d at p. 651), speculation (§ 800), and relevance (§§ 210, 350-351), among other things.

Apart from one sentence addressing the relevance of this paragraph, appellant again fails to address the specific statutory and legal objections to this evidence.[6] As

---

[5] Again, there were other objections to this evidence noted, but appellant primarily argues that it was relevant. Even if it were relevant, appellant's failure to address the alternative bases for excluding the evidence leaves us with no choice but to affirm.

13

with appellant's entire discussion of the evidentiary rulings, appellant fails to discuss the statutes that form the basis of CDU's objections or cite any relevant case law. Under the circumstances, appellant has not met his burden of establishing an abuse of discretion, and the trial court's rulings will not be disturbed.[7] (*DiCola, supra*, 158 Cal.App.4th at p. 679.)

### C. Harris declaration: exhibits P, Q, and T

Attorney Harris attached as exhibit P to her declaration "[a] true and correct copy of responses to Form Interrogatories, Employment Law Set one." CDU objected on the grounds of hearsay and multiple hearsay (Evid. Code, §§ 1200, 1201), inadmissible opinion (§ 803), lacks foundation (§ 403), and unauthenticated document (§§ 1271, subd. (c); 1401). Attached as exhibit T to the Harris declaration was a "true and correct copy of [appellant's] Responses to Special Interrogatories, Set one." CDU lodged identical objections to this evidence. Finally, attached as exhibit Q to the Harris declaration was "[a] true and correct copy of excerpts of [appellant's] Deposition Transcript," to which CDU also lodged identical objections. The trial court sustained all three objections on the ground that Harris was not qualified to authenticate the exhibits.[8]

---

[6] In his reply brief, appellant argues that the statements fall within the exceptions to hearsay set forth under Evidence Code sections 1222 and 1224. Appellant has failed to provide a citation to the record indicating that he raised these arguments before the trial court, therefore they are forfeited. (*People v. Mayham* (2013) 212 Cal.App.4th 847, 856.)

[7] We note that evidence of Dr. Carlisle's general instructions that employees not communicate directly with the Board of Trustees or UC is contained in appellant's deposition transcript. As set forth in Section II.C. below, appellant's deposition should have been considered by the trial court. Therefore, our de novo review of the summary judgment motion includes consideration of appellant's testimony that Dr. Carlisle instituted a general policy that his subordinates not communicate directly with those entities.

[8] Appellant argues that exhibit Q, like exhibits R and S, was relied upon by CDU in support of its motion. Thus, the trial court admitted and, we must assume, considered the evidence in making its decision.

Appellant cites *The Luckman Partnership, Inc. v. Superior Court* (2010) 184 Cal.App.4th 30 (*Luckman*) as authority for his position that Attorney Harris was qualified to authenticate the discovery responses attached as exhibits P and T. In *Luckman*, a construction worker who fell through a suspended ceiling sued an architect for negligence. In denying the architect's motion for summary judgment, the trial court sustained the plaintiffs' objections to evidence that there was an intervening cause of plaintiff's harm. (*Id.* at p. 34.) Specifically, the trial court sustained the plaintiffs' objections to the declaration of the architect's counsel authenticating the City of Los Angeles's verified interrogatory responses in the action.

The Court of Appeal reversed this evidentiary ruling, holding that "the declaration of [the architect's] counsel sufficiently authenticated the documents." (*Luckman, supra*, 184 Cal.App.4th at p. 34.) The court explained, "Here, [the architect's] counsel in this case declared that he had personal knowledge that the documents attached to his declaration were the [City of Los Angeles's] verified interrogatory responses in this action, along with the exhibits which the City attached to its interrogatory responses. Counsel represented a party in this action, and his declaration was sufficient to show that interrogatory responses in this action were what they purported to be." (*Id.* at pp. 34-35.)

CDU attempts to distinguish *Luckman* by arguing that Attorney Harris did not declare personal knowledge of the responses. However, a review of Attorney Harris's declaration shows that she did in fact state that the "matters stated in this declaration are within my personal knowledge." Thus, CDU's attempted distinction between *Luckman* and the present matter is unavailing.

*Luckman* suggests, and we agree, that an attorney who is representing a party in an action may properly authenticate discovery responses obtained in that action. Thus, we conclude that the trial court abused its discretion in ruling that Attorney Harris was not qualified to properly authenticate exhibits P, Q, and T, which contained CDU's responses to form interrogatories in this matter; appellant's deposition transcript; and appellant's responses to special interrogatories in this matter. Those exhibits should not have been excluded from evidence in ruling on the summary judgment motion.

15

However, as explained in further detail below, the error is not reversible. Under the California Constitution, "reversal is not warranted unless an examination of 'the entire cause, including the evidence,' discloses that the error produced a 'miscarriage of justice.' (Cal. Const., art. VI, § 13.) This test is not met unless it appears 'reasonably probable' the defendant would have achieved a more favorable result had the error not occurred. [Citation.]" (*People v. Breverman* (1998) 19 Cal.4th 142, 149.) In this case, even considering the excluded evidence, appellant has failed to provide evidence sufficient to create a triable issue of fact as to any of the causes of action at issue.

## III. Summary judgment was properly granted

Appellant argues that triable issues of fact exist as to appellant's first cause of action for age discrimination; second cause of action for failure to prevent discrimination; third cause of action for whistle-blowing; fourth cause of action for retaliation under FEHA; and sixth cause of action for termination in violation of public policy. We review each of these causes of action de novo, deciding independently whether the facts not subject to triable dispute, warrant judgment for the moving party as a matter of law. (*Nazir, supra*, 178 Cal.App.4th at p. 255.) Because, as discussed above, the trial court erroneously excluded certain discovery which was properly authenticated by appellant's attorney, our review incorporates evidence not considered by the trial court.

### A. First cause of action for age discrimination

The elements of a cause of action for age discrimination are: (1) at the time of the adverse action the employee was 40 years of age or older, (2) an adverse employment action was taken against the employee, (3) at the time of the adverse action the employee was satisfactorily performing his or her job and (4) the employee was replaced by a significantly younger person. (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1003 (*Hersant*).)[9]

---

[9] This fourth element is not always an element of the plaintiff's prima facie case. (*Hersant, supra*, 57 Cal.App.4th at p. 1003, fn. 3.) Depending on the circumstances of the case, the plaintiff needs to show that "some other circumstance suggests discriminatory motive." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 355.) In

16

"When the employee has made this showing, the burden shifts to the employer to go forward with evidence that the adverse action was based on considerations other than age discrimination. When the employer offers evidence justifying the adverse action on a basis other than age, the burden shifts back to the employee to meet his ultimate obligation of proving that the reason for the adverse action was age discrimination." (*Hersant, supra*, 57 Cal.App.4th at p. 1003.)

In its opinion, the trial court stated that appellant had not provided evidence of his age, nor had he provided evidence that he was replaced by a significantly younger person. Appellant argues that his age was undisputed, pointing to the separate statement of undisputed facts filed in opposition to CDU's motion for summary judgment, in which appellant states that he was born on October 22, 1952. The date was provided in a response to a form interrogatory attached to the declaration of CDU's attorney, Mr. Sarris. No objection to this evidence was sustained, therefore it was fully admissible.

However, we agree with the trial court that there was no evidence that appellant was replaced by a significantly younger person (nor was there any evidence of any other circumstances suggesting a discriminatory motive). The parties agree that Dr. Calmes replaced appellant as interim dean, and that her date of birth is August 3, 1956. Thus, there was no evidence that appellant was replaced as dean by someone significantly younger.

As to the provost position, CDU presented evidence that this position was filled for the 2012-2013 year by Dr. Carlisle, who was born on September 15, 1954. Appellant points out that in response to form interrogatories, CDU responded that Dr. Mary Boyce is the "current" provost at CDU. These interrogatory responses were signed on January 30, 2015. Because the evidence shows that Dr. Carlisle was provost during the 2012-2013 year, and that Dr. Boyce was the provost as of January 30, 2015, there is no conflict

---

this case, both parties raise the issue of the age of appellant's replacements, therefore we consider this an element of appellant's prima facie case. Neither party has raised any other facts which might suggest a discriminatory motive.

17

in the evidence, as appellant suggests.[10]  Neither party has pointed out any evidence of Dr. Boyce's age.

Appellant has failed to set forth a prima facie case of age discrimination.  While appellant is over the age of 40, and suffered an adverse employment action, there is simply no evidence that CDU had a discriminatory motive for the adverse action.  Under the circumstances, summary judgment was appropriate.

### B.  Second cause of action for failure to prevent discrimination

Appellant's second cause of action for failure to prevent discrimination must fall along with the first cause of action.  To establish a claim for failure to prevent discrimination, a plaintiff must first show that he was subjected to actionable discrimination.  (*Dickson v. Burke Williams, Inc.* (2015) 234 Cal.App.4th 1307, 1314 ["a finding of actual harassment is required for [plaintiff] to prevail on her claim based on the failure to take reasonable steps to prevent sexual harassment"]; see also *Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1021 ["[b]ecause we affirm summary judgment on all of Scotch's FEHA causes of action, we also affirm summary judgment on the failure to provide an environment free from discrimination cause of action"].)  Because we have affirmed summary judgment on appellant's first cause of action, his second cause of action for failure to prevent discrimination also fails.

### C.  Third cause of action for whistle-blowing

#### 1.  Labor Code section 1102.5

In general, to establish a prima facie case of whistleblower liability, a plaintiff must show "'that he or she was subjected to adverse employment action after engaging in protected activity and that there was a causal connection between the two.  [Citation.]' [Citation.]" (*Edgerly v. City of Oakland* (2012) 211 Cal.App.4th 1191, 1199 (*Edgerly*).)

Labor Code section 1102.5, subdivision (a), provides that an employer shall not "make, adopt, or enforce any rule, regulation, or policy preventing an employee from

---

[10]    Appellant's testimony that neither the dean position nor the provost position has been filled with a permanent replacement also does not create an inference of age discrimination or a triable issue of material fact.

disclosing information to a government or law enforcement agency, to a person with authority over the employee, or to another employee who has authority to investigate, discover, or correct the violation or noncompliance . . . if the employee has reasonable cause to believe that the information discloses a violation of a state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties."

Thus, to show a prima facie case of retaliation under Labor Code section 1102.5, subdivision (a), appellant must prove that he was subjected to a rule or policy preventing him from disclosing information, and that he had reasonable cause to believe that the information disclosed a violation of or noncompliance with a statute, rule or regulation.

Labor Code section 1102.5, subdivision (b) prevents retaliation for whistle-blowing. To show a prima facie case of retaliation under Labor Code section 1102.5, subdivision (b), a plaintiff must show that (1) he engaged in a protected activity (i.e., he disclosed information that he had reasonable cause to believe disclosed a violation of a statute, rule or regulation), (2) his employer subjected him to an adverse employment action, and (3) there is a causal link between the two. (*Patten v. Grant Joint Union High School Dist.* (2005) 134 Cal.App.4th 1378, 1384.)

Finally, under Labor Code section 1102.5, subdivision (c), an employer "shall not retaliate against an employee for refusing to participate in an activity that would result in a violation of a state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation." Again, there must be a causal connection between the plaintiff's alleged refusal to participate and the adverse employment action. (*Edgerly, supra*, 211 Cal.App.4th at p. 1199.)

## 2. Reasonable belief of a violation

Thus, the first question under Labor Code section 1102.5 is whether appellant had reasonable cause to believe that there existed a violation of a state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation. The trial court held that appellant "cited no authority to support his argument that violation of a 40-year-old Senate appropriations bill and/or the UME could be a basis for violation of

19

[Labor Code section 1102.5].” As CDU points out, the UME agreement is a contract, and does not qualify as a statute, rule or regulation. CDU also points out that SB 1026 was never codified.

SB 1026 is found in volume 2 of the 1973 Statutes of California, chapter 1140. It was approved by then-Governor Ronald Reagan. CDU has provided no information suggesting that the statute was ever repealed or amended. Thus, we disagree with the trial court’s decision that appellant’s protests regarding noncompliance with SB 1026 cannot provide a basis for violation of Labor Code section 1102.5. On the record before us, it appears that appellant did disclose a possible violation of a California law.

However, as set forth below, while it appears appellant engaged in protected activity, appellant did not provide sufficient evidence to create a triable issue of fact as to CDU’s violation of Labor Code section 1102.5, under any subdivision of that statute.

**3. No evidence that a policy was made or enforced to prevent appellant from disclosing a violation**

Under Labor Code section 1102.5, subdivision (a), appellant was also required to show that he was subjected to a rule or regulation preventing him from reporting such alleged violation. Appellant testified that during his time as dean, he had conversations with Katherine Nation, the associate vice president of the UC system regarding the fact that CDU was out of compliance with the UME agreement. Appellant testified in his deposition that under the tenure of the new president, in 2012, he was not permitted to speak to Dr. Nation. When Dr. Carlisle assumed the position of president, he informed the entire staff that they were not to communicate directly with the Board or the UC. This was because Dr. Carlisle did not think this was the way other institutions worked and he did not feel it was appropriate. Appellant stated that he had no issues with this direction. He did not object to being prohibited from speaking to these entities, as he felt it was the president’s prerogative.

Appellant’s testimony thus shows that the policy was not in place for the purpose of preventing him from disclosing information, as required by Labor Code section 1102.5, subdivision (a). Instead, this was part of a general policy regarding the

20

president's position as to the appropriate way institutions should work. Appellant did not disagree with this policy. Nor is there any evidence that he attempted to communicate his concerns to the Board or the UC during the time that this policy was in place. Thus, the policy was not enforced in a way to prevent appellant from voicing his concerns. He never attempted to do so. Instead, he willingly followed an existing policy of the current president which outlined the proper hierarchy of communications.

In fact, when specifically asked in his deposition why he had not gone to someone outside of CDU to complain about CDU's alleged noncompliance, appellant responded that he had not complained to outside sources because he was not sure if there was "another agreement that has been forged." Thus, by appellant's own admission, his reason for failing to report the alleged violation was that he did not have sufficient information to know if a violation had in fact occurred -- not because of a policy preventing him from doing so.

A prima facie case of violation of Labor Code section 1102.5, subdivision (a) has not been shown, because there is no evidence that CDU made or enforced a policy preventing appellant from disclosing the alleged violations.

**4. No evidence of a causal link between appellant's alleged protected activities and the adverse employment action**

Under Labor Code section 1102.5, subdivision (b), a plaintiff cannot merely show that he or she engaged in whistle-blowing activities that were followed at some point by his termination. There must be evidence of a causal connection between the protected activity and the adverse employment action. Casual connection is usually shown with circumstantial evidence and includes a consideration of the proximity in time between the protected action and the allegedly retaliatory employment action. (*Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 615.) The employee must present more than speculation. "[A] material triable controversy is not established unless the inference is reasonable. And an inference is reasonable if, and only if, it implies the unlawful motive is more likely than defendant's proffered explanation. [Citation.]" (*Cucuzza v. City of Santa Clara* (2002) 104 Cal.App.4th 1031, 1038 (*Cucuzza*).)

21

Appellant has failed to provide evidence of the required causal link between his reporting of the alleged violations and the adverse employment action to establish a cause of action under Labor Code section 1102.5, subdivision (b). Appellant stated that his first discussions with Dr. Carlisle regarding compliance were in 2011, and that senior leadership heard him repeatedly voice his concerns. Appellant brought up the noncompliance issue several times with very little response; it was put on the back burner. In fact, appellant testified that he articulated concerns regarding the program throughout his time as dean of CDU. Because appellant's complaints had been ongoing throughout his five-year tenure, there is no temporal connection between appellant's alleged protests about the noncompliance and the adverse employment action.

Appellant also claims that he complained to each CFO that the funds received from UC should not be listed as "unrestricted" on CDU's budget. When asked which CFO he complained to, appellant responded "To Ron Lau and every CFO prior to him." Appellant was informed by Mr. Main that the funds are used at the discretion of the president. Again, there is no evidence that Dr. Carlisle was involved in, or even aware of, these conversations. In addition, because appellant had complained to every CFO throughout his tenure, there is no specific temporal connection between appellant's complaints and the adverse employment action.

**5. No evidence of a causal link between appellant's alleged refusal to participate and the adverse employment action**

Appellant also attempts to assert a prima facie case under Labor Code section 1102.5, subdivision (c) for his refusal to sign the final audit during his tenure as dean. Appellant testified that there is a general purpose audit relating to the contracts between UC and CDU. The audit also relates to the funds that CDU receives through UC deriving from SB 1026. Appellant agreed that UC had never claimed that the audits were insufficient. However, appellant suggested that the audits were incorrect and stated that he refused to sign the last audit during his tenure as dean.[11] There is no evidence that

---

[11] Appellant was unsure which year he had refused to sign an audit.

22

Dr. Carlisle was aware of appellant's refusal to sign the audit or whether appellant's action had any consequences at all. Thus, there is no evidence of a causal connection between appellant's alleged refusal to participate in the final audit of his tenure and any adverse employment action.

Based on the evidence before the trial court, and the evidence improperly excluded, we conclude that summary judgment was properly granted as to appellant's third cause of action for whistle-blowing.

### D. Fourth cause of action for retaliation under FEHA

To establish a prima facie case of retaliation under FEHA, a plaintiff must show "(1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action. [Citations.]" (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042.)

A protected activity under FEHA includes the employee's opposition to "any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." (Gov. Code, § 12940, subd. (h).) In support of his claim for retaliation under FEHA, appellant points to his response to a special interrogatory in which he made the following statement:

> "Made official HR claim against President (David Carlisle) concerning fear of retaliation in May 2012 (prior to dismissal). . . . No evidence that his superiors were informed of claim or that an investigation was undertaken."

Appellant's own response negates the required causal link. Appellant points to no evidence that Dr. Carlisle ever knew of appellant's alleged "HR claim" or that it ever left the desk of the unknown human resources employee that accepted the claim. To survive summary judgment, appellant must show more than the filing of an "HR claim." He must provide evidence of a causal connection between the alleged complaint and his termination. He has not done so. Summary judgment was properly granted as to this cause of action.

### E. Sixth cause of action for termination in violation of public policy

Appellant maintains that the trial court made no ruling regarding the sixth cause of action against CDU. In its March 26, 2015 ruling granting summary judgment, the trial court stated that there were only four remaining causes of action. However, appellant maintains, this was incorrect. The sixth cause of action remained viable as to CDU. Therefore, appellant argues, the sixth cause of action against CDU survived both the demurrer and the summary judgment motion, and the judgment should be reversed and remanded as to this cause of action.

CDU maintains that the court simply made a typographical error in its ruling in stating that four causes of action were at issue, instead of five. Despite this typographical error, CDU states, the fact remains that the parties briefed all five causes of action, and the trial court clearly found that there were no genuine issues for trial and that the summary judgment motion was granted in full. Had it been a partial ruling, the trial court would have granted the alternative motion for summary adjudication, not summary judgment.

The record shows that the trial court granted summary judgment in full. We may affirm this ruling if it is correct on any ground. (*Bunnell, supra*, 64 Cal.App.4th at p. 1367.)[12]

---

[12] Appellant complains that the trial court's failure to specifically address the sixth cause of action is in violation of Code of Civil Procedure section 437c, subdivision (g), which requires that "[u]pon the grant of a motion for summary judgment on the ground that there is no triable issue of material fact, the court shall, by written or oral order, specify the reasons for its determination. The order shall specifically refer to the evidence proffered in support of and, if applicable, in opposition to the motion which indicates that no triable issue exists." Appellant admits that failure to provide a sufficient statement of reasons is not automatic grounds for reversal. (*Santa Barbara Pistachio Ranch v. Chowchilla Water Dist.* (2001) 88 Cal.App.4th 439, 448- 449 [court's failure to provide a sufficient statement of reasons is not automatic grounds for reversal, since it is the validity of the ruling which we review, and not the reasons therefor].) Here, where the evidence relating to the sixth cause of action was the same as the evidence relating to the third and fourth causes of action for whistle-blowing and retaliation under FEHA, we find that the trial court's failure to specifically address the evidence relating to appellant's sixth cause of action is not reversible error.

Wrongful termination in violation of public policy is a tort remedy available when an employer's discharge of an employee contravenes the dictates of public policy. (*Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 177.) In order to sustain a claim of wrongful discharge in violation of public policy, a plaintiff must show that (1) the employee engaged in a protected activity, (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action. (*Loggins v. Kaiser Permanente Internat.* (2007) 151 Cal.App.4th 1102, 1108-1109.)

In order to show a protected activity under this tort, an employee must have (1) refused to violate a statute, (2) performed a statutory obligation, (3) exercised a constitutional or statutory right or privilege, or (4) reported a statutory violation for the public's benefit. (*Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 76.) In order to avoid judicial policymaking, the public policy giving rise to the termination must have "'a basis in either constitutional or statutory provisions.'" (*Id.* at p. 80.) Internal reports of wrongful activity may be considered to be protected activity. (*Id.* at p. 85.)

Assuming that appellant's internal reports of noncompliance with the UME agreement and SB 1026 qualify as a protected activity, appellant must also "demonstrate the required nexus between his reporting of alleged statutory violations and his allegedly adverse treatment." (*Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1258, overruled on other grounds in *Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 498.) Appellant's cause of action for wrongful termination in violation of public policy suffers from the same omission as the previous two causes of action discussed. Appellant has failed to point to any evidence of a causal link between such complaints and his termination from the positions of dean and provost.

As discussed above, appellant's testimony that he complained of noncompliance throughout his five-year tenure as dean undermines any suggestion of temporal proximity. There is no evidence that his failure to sign the final audit report was ever brought to the attention of the president, Dr. Carlisle, who had the sole authority to terminate appellant from his position as dean and provost. In sum, there is simply no

25

evidence suggesting that an unlawful motive for appellant's termination is more likely than respondents' proffered explanation. (*Cucuzza, supra*, 104 Cal.App.4th at p. 1038.) The grant of summary judgment as to appellant's sixth cause of action is therefore affirmed.

## DISPOSITION

The judgment is affirmed. Respondent is awarded its costs of appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
CHAVEZ

We concur:


_____, P. J.
BOREN


_____, J.
ASHMANN-GERST

26